THE ROESSLER & HASSLACHER CHEMICAL COMPANY, PLAINTIFF IN ERROR, v. JOHN DOYLE, DEFENDANT IN ERROR.

Submitted March 26, 1906—Decided June 11, 1906.

1. An action may be maintained by one who suffers a special injury from a public nuisance. Where the public nuisance consists in an injury to a public right, such as an obstruction placed in a highway or in navigable waters, the private injury, to be actionable, must be peculiar to the plaintiff and distinct in kind and degree from that suffered by the public. Where the public nuisance consists of the use of private property so as to annoy a large number of persons in the enjoyment of their health and property, the injury to each is special and actionable.

2. The fact that defendant's factory for making cyanide of sodium, from which foul odors and loud noises emanated, which annoyed the plaintiff in the use and occupation of his dwelling, was located in the neighborhood of factories is not an answer to an action for maintaining a nuisance. While the character of the neighborhood may be considered in determining the kind and degree of annoyance which will be regarded as a nuisance, it will not relieve the person who caused the annoyance from liability if the existence of a nuisance is proved.

3. A nuisance which annoys the occupants of a dwelling, and so renders it less valuable as a habitation, is an injury to property.

On error to the Middlesex Circuit.

Before Justices FORT, PITNEY and REED.

For the plaintiff in error, *Charles C. Hommann* and *Willard P. Voorhees.*

For the defendant in error, *George S. Silzer.*

The opinion of the court was delivered by

REED, J. This writ brings up a judgment obtained in the Circuit Court of Middlesex county.

The defendant operated in Perth Amboy a manufactory of cyanide of sodium. The process is conducted by the introduction of sodium metal into large kettles or pots, where it is heated into a molten state. Then a certain amount of charcoal is put into the molten mass, and into this mixture is passed ammonia gas, which is decomposed into nitrogen and hydrogen. The nitrogen is taken up by the sodium, and the hydrogen is liberated and burned at the top of a pipe which is attached to the cover of the pot.

The plaintiff lived on the opposite side of the street from this factory. His complaint was that he was annoyed by foul odors issuing from the defendant's plant, by explosions and by brilliant lights kept burning in the factory.

It was admitted by defendant's witnesses that when the charcoal was introduced into the pot sometimes the hydrogen gas would ignite and cause an explosion. How loud and how

frequent those explosions was a question about which there was a difference of opinion among the witnesses. There was a conflict also between the witnesses of the plaintiff and those of the defendant as to the prevalence of odors and as to their offensive character.

An examination of the testimony exhibits sufficient evidence of the existence of disagreeable odors and noises emanating from defendant's plant to justify the jury in its findings that the factory was a nuisance from which the plaintiff suffered.

The plaintiff in error, however, insists that if a nuisance existed it was a public nuisance from which the plaintiff below received no special and peculiar injury distinct from that suffered by the public.

It is therefore contended that no actionable injury was proved.

The doctrine asserted, namely, that there must be some special and particular damage to the plaintiff in case of a public nuisance, is entirely settled.

The difficulty lies in the application of the rule to the facts of the particular case.

But a public nuisance may arise in two classes of cases. Where the right invaded by the offender is a common and public right—one which belongs to every citizen, such, for instance, as the right to use a highway or park or navigable waters—the plaintiff must show that he had received an injury distinct in kind from that received by the rest of the public. The private injury in this class of cases is said to be merged in the common nuisance and injury to all citizens, and the right is to be vindicated and the wrong punished by a public prosecution.

What can be said to be a special injury in this class of cases has given rise to a great diversity of opinion.

But the principle underlying these cases has never (in the language of Chief Justice Bigelow, in *Wesson* v. *Washburn Iron Co., 95 Mass.* 95, 101) been extended to cases where the alleged wrong is done to private property, or the health of individuals is injured, or their peace and comfort in their dwellings is impaired by the carrying on of offensive trades

which create noisome smells or disturbing noises, or causes other annoyances and injuries to persons and property, however numerous or extensive, may be the instances of discomfort, inconvenience or injury to persons and property thereby occasioned.

The distinction in this respect between nuisances which consist in the disturbance of a common or public right and nuisances which constitute a private wrong by injuring property, health or comfort, is lucidly and I think correctly expounded in the opinion just mentioned of the learned Chief Justice of Massachusetts.

The same doctrine was recognized by the New York Court of Appeals in the case of *Francis* v. *Schaelekapf,* 53 *N. Y.* 152. It was an action for damages resulting to plaintiff's rented property from the offensive smells arising from defendant's tannery, which made plaintiff's houses unfit for habitation.

There was a motion to nonsuit on the ground that the stench injured a large number of houses and so was common, and the only remedy was by an indictment.

The court, by Judge Grover, however, said: "It is no defense, when a wrongdoer is called upon to compensate for the damages sustained from his wrongful act, to show that he, by the same act, inflicted a like injury upon numerous other persons."

This was following the opinion expressed by Chancellor Walworth, speaking for the old Court of Errors, in *Lansing* v. *Smith,* 4 *Wend.* 9, 15.

He said: "The punishment of the wrongdoer by a criminal prosecution will not compensate for the individual injury, and a party who has done a criminal act cannot defend himself against a private suit by alleging that he has injured many others in the same way, and that he will be ruined if he is compelled to make compensation to all." To the same purport are the cases of *Wylie* v. *Elwood,* 134 *Ill.* 281, and *Seifried* v. *Hays,* 81 *Ky.* 377.

Says Mr. Wood: "This class of wrong, of whatever nature or effect, that invade private rights as well as public, always

have been and always can be redressed by suits in favor of those whose private rights are invaded, even though it opens the door for a multitude of actions for the same wrongful act. The distinction is this: Where a private personal right is invaded the very fact of its invasion imports a consequent damage.

"A man cannot stand by and suffer another to corrupt the air in the neighborhood of his dwelling. * * * If he does his natural rights are lost and become modified by and burdened with this unlawful use by another.

"Therefore, any injury to such private rights, even though its effects are so general as to bring it within the rule as to public nuisances, are such special and particular damage as brings the party within the beneficial operation of the rule in reference to suits for injury arising from public nuisances." *Wood Nuis.,* § 689.

The injury suffered by the plaintiff was special, although others may have suffered from the same cause.

The refusal of the trial justice to charge several requests, all of a similar character, the principal one being the eleventh request, is assigned for error. This request was that the jury should be charged that the undisputed proof being that the plaintiff's residence is in a manufacturing locality, that the alleged nuisance consists of odors and noises merely affecting the air, and that the same affects the plaintiff's personal comfort only, such odors arising as incident to the proper conduct of the defendant's business, the plaintiff has not made out an actionable nuisance and cannot recover.

The cases cited as an illustration of the principle supposed to be embodied in this request are *Hale* v. *Barlow,* 4 *C. B.* (*N. S.*) 334, decided in 1858 by the Court of Common Pleas, and *St. Helens Smelting Co.* v. *Tipping,* 11 *H. L. Cas.* 642, decided in 1865 by the House of Lords.

The first was an action against the owner of a brick kiln for rendering plaintiff's house unfit for habitation by reason of the noxious vapors arising from the brick kiln. The trial justice charged that if the brick kiln was in a proper place, then, although plaintiff's enjoyment of his property may have

been rendered uncomfortable, he cannot maintain an action. This charge was held to be correct.

In the second case an action was brought to recover damages for an injury to plaintiff's trees, caused by the fumes created by the smelting works of the defendant. Justice Mellor, who tried the case, asked the jury whether the enjoyment of the plaintiff's property was sensibly diminished, to which the jury answered "Yes." He then asked the jury whether the business carried on was an ordinary business of smelting copper, and the answer was that it was and was conducted in a proper manner—in as good a manner as possible. To the third question, whether the jury thought it was carried on in a proper place, the answer was, "We do not." Verdict was entered for the plaintiff.

It appeared that the whole neighborhood was studded with factories and chimneys; that there was some alkali works close by, the smoke from which was as injurious as that of the defendant's, and sometimes united with it. The fact that the defendant's works existed before plaintiff bought his property was relied upon. The trial justice told the jury that every man was bound to use his property so as not to injure the property of his neighbors; that the law did not regard trifling inconveniences; that in an action for nuisance to property arising from noxious vapors, the injury, to be actionable, must be such as visibly to diminish the value of the property and the comfort and enjoyment of it. He charged that all the circumstances, including those of time and locality, ought to be considered, and that with respect to the latter it was clear that in countries where great works had been erected and carried on, persons must not stand on their extreme right and bring actions in respect to every matter of annoyance, for if so, the business of the whole country would be seriously interfered with.

The cause was carried to the Exchequer Chamber, where the judgment was affirmed. Then to the House of Lords, where, after receiving the approval of six judges who were summoned, the decision of the Exchequer Chamber was affirmed and the charge of Justice Mellor approved.

In the opinions delivered in the House of Lords, the meaning of the words "proper," "convenient" or "suitable," as applied to the place, were defined as meaning a place where no actionable injury was caused to the property of another.

Lord Westbury said: "The only ground upon which your lordships are asked to set aside the verdict is that the whole neighborhood is more or less devoted to manufacturing purposes of a similar kind, and therefore, as this copper smelting is carried on in what the appellants contend a fit place, it may be carried on with impunity, although the result may be utter destruction or the very considerable diminution of the value of plaintiff's property. I apprehend that this is not the meaning of the words 'suitable' or 'convenient' which have been used as applicable to the subject. The word 'suitable,' unquestionably, cannot carry with it this consequence—that a trade may be carried on in a particular locality, the consequence of which trade may be injury and destruction to the neighboring property."

Lord Cranworth remarked that Justice Mellor's language was this, namely: "It must be plain that persons using a lime kiln or other works which evict noxious vapors may not do an actionable injury to another, and that any place where such an operation is carried on so that it does occasion an actionable injury to another, is not, in the meaning of the law, a convenient place." He proceeded to say: "It is extremely difficult to lay down any actual definition of what constitutes an injury, because it is always a question of compound facts, which must be looked to to see whether or not the mode of carrying on a business did or did not occasion so serious an injury as to interfere with the comforts of life and enjoyment of property."

Lord Wensleydale, after concurring in these opinions, observed that "everything must be looked at from a reasonable point of view; therefore, the law does not regard trifling and small inconveniences, but only regards sensible inconveniences —injuries which sensibly diminish the comfort, enjoyment or value of the property which is affected."

The expressions of these judges referring to the charge of

Mr. Justice Mellor and approving his language are obscure, if the report of the case in 11 *H. L. Cas.* 642 is alone consulted. The charge is there only meagerly stated. In the report of the case in 35 *L. J.* (*N. S.*) 66, the charge is exhibited *in extenso,* and to the language of Justice Mellor, as there reported, the remarks of the lords in the House of Lords are referable.

In the observations of Lord Westbury, he drew a distinction between nuisances which caused an injury to property and nuisances which are only productive of sensible, personal discomfort. He expressed his opinion that whether a cause which only affected one's quiet or senses or nerves was a nuisance, depended upon the place where the thing complained of occurred. But that when a cause produced a sensible injury to property, such a consideration did not apply. This distinction was not the subject of remark by the other judges. These observations of Lord Westbury seem to have suggested the form of the request on the trial of the present case. The court was asked to charge that the undisputed evidence was that the odors and noises merely affected the air and plaintiff's personal comfort; that the plaintiff's residence is not in a manufacturing locality, and that the odors were incident to the proper conduct of defendant's business; therefore, the plaintiff could not recover.

But it is apparent that if the odors and noises existed as testified to by the plaintiff and his witnesses, they diminished the enjoyment, habitableness and value of his dwelling, and so injured his property. The request was properly refused.

All the requests to charge which are grounded upon a distinction between personal discomfort and injury to plaintiff's habitation, were based upon a difference which in this case did not exist.

Indeed, no judge has ever suggested that personal discomfort received by an owner of property while residing therein would not afford a ground of action. It may depend upon the degree of personal discomfort, and in measuring the degree it may well be that, in the language of the charge of Justice Mellor and of the lord justices, all the surrounding

circumstances must be taken into account in judging whether the degree is of sufficient importance to confer a right of action. All this was left to the jury in the present case by the trial judge. He could not tell the jury that, as a legal conclusion, the degree of annoyance in this case was not such as to support a recovery.

We can perceive no error in failing to charge any requests.

It is also assigned for error that the court charged that if, as plaintiff testified, the defendant's works emitted light and fumes that came across the plaintiff's house and surcharged the air with a smarting substance, which burnt his eyes and was exceedingly offensive to the smell and to the taste, and caused him headaches; if they caused loud reports to be made, detonations at night, disturbing him in his sleep, and at times in the night there would suddenly be cast out a vivid light, which would awake him—then defendant had no right to do that and it amounted practically to a confiscation of plaintiff's property.

There was no error in this. If the defendant did these acts, with the stated result, there was a clear case of actionable injury to plaintiff—a case where, in the language of the declaration, the plaintiff was annoyed in the use, occupation and enjoyment of his dwelling-house and premises.

The judgment is affirmed.