JOHN DIAMOND & another *vs.* INHABITANTS OF NORTH ATTLE-
BOROUGH.

Bristol.     October 27, 1914. — December 31, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Watercourse.   Nuisance.   Trespass.   Municipal Corporations.   North Attle-
borough.   Damages,* In tort.

To increase unreasonably the amount of the water in a natural watercourse so as
to cause the stream to overflow its banks and thus injure the adjoining property
gives the owner of that property a right of action as much as it would to dimin-
ish or pollute the water.

The authority given to the town of North Attleborough by St. 1909, c. 269, § 1, to
construct a system of sewerage and for that purpose to "lay, make and main-
tain subdrains, and, with the approval of the State board of health, discharge
the water into any brook, stream or watercourse within the town," gives that
town no right to injure private property without exercising the right of emi-
nent domain and making compensation; and the owner of land adjoining a
brook in the town, whose land is in part submerged and in part washed away
by the negligent overflowing of the brook caused by a subdrain constructed
under the statute by the town with the approval of the State board of health,
can maintain an action of tort at common law against the town to recover the
amount of the damage caused by its negligence in pouring an excessive amount
of water upon his land.

Under St. 1909, c. 269, § 1, which authorizes the town of North Attleborough
to construct a system of sewerage and contains a provision that the town for
this purpose "may, within its limits, deepen, widen and clear of obstruction
any brook, stream or watercourse, and straighten or alter the channel," it is not
the duty of the town to keep a brook, into which one of its subdrains empties,
from becoming choked by the accretion of foreign materials other than the
water added through the subdrain if the town has not chosen to exercise

the right of eminent domain given it by the statute to take the easements in private land requisite to enable it to clear the brook.

If, under a statute authorizing a town to construct a system of sewerage, the town has made a mistake in failing to take by eminent domain the right to clean out a certain brook into which one of its subdrains empties, this is a defect in the plan of its system of sewerage, for the consequences of which it is not liable; it being liable only for negligence in carrying out a plan already adopted.

In an action of tort at common law against a town for damage done to the plaintiff's land by negligently pouring upon it an excessive amount of water by means of a subdrain emptying into a brook adjoining the land, whereby on one or two occasions the land was overflowed and a part of the earth was washed away, it is error for the presiding judge to permit the plaintiff to testify to the difference in the value of his land before the opening of the drain into the brook and its value thereafter, because it is not to be assumed that the defendant will continue its tortious acts in the absence of its consent to have the damages assessed on that theory, and therefore the damages given should not include compensation for future recurrence of like injuries.

TORT against the town of North Attleborough for damage done to the land of the plaintiffs by the discharge of water by the defendant into a small natural stream called Mire Brook, causing the brook to overflow its banks and to submerge and wash away portions of the plaintiffs' land. Writ dated March 21, 1913.

The defendant in its answer alleged that by St. 1909, c. 269, it was authorized to lay, make and maintain subdrains and, with the approval of the State board of health, to discharge the water into any brook, stream or watercourse within the town, and that any water discharged by it into Mire Brook was discharged under this authority and with the approval of the State board of health. The answer further alleged that, if the plaintiffs ever had any cause of action, it was barred by § 5 of St. 1909, c. 269, which required that a petition for damages should be brought within two years from the time when the cause of action accrued.

In the Superior Court the case was tried before *Raymond,* J. The material evidence is described in the opinion. The exception to the admission of evidence referred to in the opinion was as follows: John Diamond, one of the plaintiffs, was asked by his counsel the question, "And what should you say the value of your property was before this pipe was emptied into your land?" He answered, "About fifty-five hundred dollars." He then was asked, "What did you consider the value of that property after the subdrain was put upon your land?" The defendant objected to this question but the judge admitted it and the

defendant excepted.   The witness answered, "Forty-five hundred dollars."

At the close of the evidence the defendant asked the judge to make the following rulings:.

"1. Upon all the evidence in the case, the jury must find for the defendant.

"2. There is no. evidence that it was the duty of the defendant town to clear Mire Brook of obstructions and so the town is not liable in this action.

"3. There is no evidence that the defendant town took any water rights in Mire Brook and therefore the plaintiffs cannot recover from any obstruction of the waters of said brook in this form of action.

"4. Chapter 269 of the Acts of 1909 gives the defendant the right to lay, make and maintain subdrains and with the approval of the State board of health to discharge the water into any brook, stream or watercourse within the town, and the defendant is not liable in.this case upon the evidence introduced for any clogging up of said brook or said subdrain or either of them.

"5. Section 5 of Chapter 269 of the Acts of 1909 gives the plaintiffs a right of action, if any they have, and they cannot maintain this action of tort.

"6. The plaintiffs must show actual damage or loss resulting from the acts of the defendant in order to recover in this action and there is no evidence in this case of any damage for which the defendant is responsible."

The judge refused to make any of these rulings, and gave other instructions to the jury.   The defendant's second exception to the judge's charge, referred to in the opinion, was as follows: "2. The defendant objected to so much of the judge's charge as instructed the jury that the town had authority to go on the land near Mire Brook and clean it out, that they had the authority to do it, but were not called upon to do it unless they saw fit and if they failed to do it and their negligent failure caused injury to other people, they are responsible for it."

The jury returned a verdict for the plaintiffs in the sum of $50; and the defendant alleged exceptions.

*F. S. Hall*, (*S. P. Hall & G. L. Connors* with him,) for the defendant.

*R. P. Coughlin,* (*L. H. Coughlin* with him,) for the plaintiffs.

RUGG, C. J.   This is an action of tort wherein the plaintiffs seek to recover damages alleged to have been sustained by reason of the flooding of their land through the negligence of the defendant in causing the overflow of an adjacent brook.

It is undisputed that the defendant, acting under the authority conferred by St. 1909, c. 269 (hereinafter called the special statute), laid out and constructed a system of main drains and common sewers.   It also, for the purpose of disposing of underground water, constructed a subdrain through land of the plaintiffs, with the outlet into the brook.   This brook was a natural watercourse in which apparently some water flowed at all seasons of the year.   The defendant took by eminent domain the right to lay this subdrain in the land of the plaintiffs and has paid them for all damages thereby caused.   But it has made no taking of any rights in the brook.   By § 1 of the special statute the defendant was authorized to "lay, make and maintain subdrains, and, with the approval of the State board of health, discharge water into any brook, stream or watercourse within the town." Approval was given by the State board of health to the discharge of water through the subdrain in question into the brook.

There was evidence tending to show (which in view of the verdict must now be taken as true) that the waters of the brook were so largely increased by reason of the confluence of the waters of the subdrain that its banks were overflowed and damage caused to the plaintiffs' estate.

Certain governing principles of law are well established.   A municipality is not responsible for any defect or want of efficiency in a general plan for drainage adopted by a board of public officers, even though private individuals may be exposed to great inconvenience and loss.   *Child* v. *Boston,* 4 Allen, 41.   *Buckley* v. *New Bedford,* 155 Mass. 64.   *Manning* v. *Springfield,* 184 Mass. 245. *Robinson* v. *Everett,* 191 Mass. 587.   It is answerable in damages, however, if it discharges the outfall of a system of sewerage upon the property of another.   This is upon the ground that such discharge constitutes a private nuisance, for which action may be maintained by the persons injured.   This principle finds illustrations in the construction of drains for the disposal of house sewage, *Haskell* v. *New Bedford,* 108 Mass. 208, *Brayton* v. *Fall*

*River*, 113 Mass. 218, and also in those which dispose of surface water, *Manning* v. *Lowell*, 130 Mass. 21, *Daley* v. *Watertown*, 192 Mass. 116. In reason it applies with equal force to underground waters collected and carried in a drain exclusively devoted to that purpose. The damage is the same in its substantial effects from whatever source the water may be collected. It is as distinctly a damage to property unreasonably to increase the water naturally flowing in a brook so as to overflow its banks as it is to diminish or pollute such water. See *Stratton* v. *Mount Hermon Boys' School*, 216 Mass. 83, 86.

The defendant seeks exoneration from damages, because under § 1 of the special statute it was authorized to discharge water into any brook within the town "with the approval of the State board of health." Such approval, however, does not furnish a shield for taking or causing direct injury to private property without compensation. Such approval in essence gave no increased legal efficacy to the act of the sewer commissioners in determining to turn the water into the brook. That was an act undertaken by public officers within the scope of the authority conferred upon them by the Legislature. The sanction of the State board of health was superadded, not because thereby the character of the act would be changed, but in order that the general public interest might be guarded by a board not likely to be biased by consideration of local expediency. The approval of the State board of health was not a police regulation affecting the use of property for the benefit of the public health, subject to which all property is held, and which can be made without recompense. *Chicago, Burlington & Quincy Railroad* v. *Drainage Commissioners*, 200 U. S. 561. That approval, either alone or combined with the act of the defendant, did not convert the brook into a common drain, nor did it constitute a taking for that use.

The plaintiffs' complaint is that a part of their land has been submerged by the enlarged flow of the stream and some of it washed away by the increased force of its current. This in substance and effect is a trespass. If continued permanently by legal authority, it may become an expropriation. *United States* v. *Lynah*, 188 U. S. 445, 464. *Manigault* v. *Springs*, 199 U. S. 473, 484. If the right to do this had been taken by eminent domain, then the plaintiffs' only remedy would be for the assess-

ment of damages in the way provided by the special statute. But if there was no taking sufficiently broad to authorize the doing of the acts now complained of, then the plaintiffs have a right of action in tort.

The record fails to disclose any taking or any public and notorious act which could have constituted notice to the plaintiffs that their land would be overflowed or eroded. The appropriation of the land for the laying of the drain, or even its construction with an opening into the brook, did not imply that the banks of the brook would be unable to contain the increased flow. Moreover, there was evidence that the overflow was not caused by the subdrain as at first constructed, but by a subsequent change whereby the course of the water discharged was deflected by means of an elbow. A city or town becomes liable to an action at law by the construction of a system of drainage of such a character that water is collected into an artificial channel and from its outlet accumulated upon the land of a private owner in such quantities as to create a private nuisance. This has been explained at length in previous decisions with affluent citation of authorities. It is unnecessary to go over the ground again. *Bates* v. *Westborough,* 151 Mass. 174, 182. *Nevins* v. *Fitchburg,* 174 Mass. 545. *Whitten* v. *Haverhill,* 204 Mass. 95, 104. The plaintiffs' case falls within this class.

It follows that the present cause of action is not barred under § 5 of the special statute.

There was considerable evidence touching the condition of the bed of the brook below the land of the plaintiffs, and tending to show that it had become choked from the accretion of foreign materials other than the pure water added through the drain of the defendant. If the plaintiffs' damage resulted from these causes, the defendant cannot be held responsible. By the special statute the defendant was empowered to "deepen, widen and clear of obstruction any brook, stream or watercourse, and straighten or alter the channel." This conferred no authority upon the defendant to enter without leave upon private land for the purpose of performing any or all of these acts. Perhaps it thereby would have a right to perform such acts by license of the owners of the land upon which it might be necessary to go. But by § 5 ample power was conferred upon the town to make a taking

of the requisite easements to enable it to perform such acts. The brook had not become a common drain by any or all of the acts done in such a sense as to render the defendant responsible for it or to enable it to enter upon it for cleaning purposes. See *Melrose v. Hiland,* 163 Mass. 303, 309.

There was error in the instructions upon this point. The jury were told that the town had authority under the special statute to go upon the land and clean out the brook, and that the plaintiffs might recover damages resulting from a failure to do this. Whether the defendant should take by eminent domain the right to clean out the brook was a part of its plan of the system. For failure to employ the highest skill in this regard, as has been pointed out, the defendant is not liable. It is only liable for negligence in maintaining the plan actually adopted. See *Morse v. Worcester,* 139 Mass. 389. The failure to adopt a plan sufficient in this respect of itself conferred no right of action upon the plaintiffs. Its only liability rested upon negligence in pouring an excessive amount of water upon the plaintiffs' land. Hence, the failure to clean out the bed of the stream below the plaintiffs' land, if that would have prevented damage to the plaintiffs, was not negligence in the defendant. The defendant's second request (except the part exonerating it from liability) and its third request for rulings should have been given and its second exception to the charge of the judge must be sustained.

One of the plaintiffs was permitted, subject to the exception of the defendant, to testify as to the difference between the value of their land before the opening of the drain into the brook and its value thereafter. That ruling was erroneous. This is not a petition for the assessment of damages resulting from a taking of any land or right in land. It is simply an action of tort to recover for the damages caused by the negligent overflowing of land on one or two occasions and the washing away of some earth. The admission of the evidence afforded the jury basis for a computation of damages founded on the theory that the wrong done to the plaintiffs was permanent and never would be remedied, and hence that a sum should be awarded sufficient to include all future recurrences of like injuries. Manifestly this was wrong and permitted a recovery of damages in excess of those to which they were entitled. It is not to be assumed, in the absence of consent by the

defendant to the assessment of damages upon the other theory, that the defendant will continue its tortious acts. *Aldworth* v. *Lynn,* 153 Mass. 53.

The plaintiffs were entitled only to the damages actually sustained by them up to the date of their writ.

*Exceptions sustained.*