NATHAN MATTHEWS & another, trustees *vs.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

Suffolk.   March 25, 26, 1918. — July 1, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Practice, Civil,* Conduct of trial, Discretionary excusing of juror, Auditor's report, Withdrawal of evidence on issues not submitted to the jury, Exceptions, New trial. *Jury and Jurors. Evidence,* Auditor's report, Relevancy and materiality. *Negligence,* Railroad. *Nuisance. Smoke. Damages,* In tort.

At the impanelling of a jury at the trial of an action by two trustees, acting in the same interest, against a railroad company, the plaintiffs challenged peremptorily three jurors and their names were read off and they left their seats before the defendant objected.   An objection made by the defendant that the plaintiffs were entitled to but two challenges was sustained by the presiding judge, but, it appearing to the judge from the conduct of one of the jurors as he left his seat that the plaintiffs would not have a fair trial if he remained a member of the

panel, the judge in the exercise of his discretion also directed that the third juror whose name had been read as challenged by the plaintiffs should be excused. *Held*, that it could not be said that the judge's informal exercise of his discretion was prejudicial to the defendant.

An action of tort with a declaration in three counts was referred to an auditor who filed two reports. At the trial of the action the report was introduced in evidence. At the close of the evidence the plaintiff elected to go to the jury upon one count only, and at the request of the defendant many portions of the reports were withdrawn specifically from the jury's consideration by the judge, who, at the defendant's request, read to the jury the portions so withdrawn. The report itself did not go to the jury room and the charge contained instructions in much detail as to the jury's duty to disregard the auditor's rulings of law and those of his findings of fact which were not pertinent to the counts submitted to the jury; and it was *held*, upon a careful review of the record, that no error was committed.

The trial of the action above described lasted six weeks and was complicated by the elimination, upon an election of the plaintiff at the close of the evidence, of two of the counts of the declaration and of much of the auditor's reports. The defendant moved for a new trial and the motion was overruled; and *it was said* that, as a practical matter, if it had appeared to the presiding judge that the defendant's rights had not been safeguarded properly by the jury, it was to be presumed that the motion for a new trial would have been granted.

At the trial of an action of tort against the New York Central and Hudson River Railroad Company for damages caused to property of the plaintiff adjacent to the railroad in Boston by unreasonable and unnecessary excess of smoke, soot and cinders from the defendant's locomotives, it is proper to exclude as immaterial questions asked of the plaintiff in cross-examination as to his applying during the period of the alleged wrongful acts of the defendant for an abatement of taxes on other properties belonging to him on different streets not nearer than a quarter of a mile to the property in question and not affected by the railroad.

At the trial of the action above described, the defendant asked a witness in cross-examination, "You have observed smoke on other roads coming into Boston, I suppose, entering Boston?" and answered, "On the New York, New Haven, and Hartford, yes." On redirect examination the witness then was permitted to testify, subject to an exception by the defendant, that in one of the years covered by the action he had observed about one hundred engines on the New York, New Haven, and Hartford railroad in the vicinity of Cumberland and Durham streets. *Held*, that the evidence was admissible because of the question asked of and answered by the witness in cross-examination.

Part of the property alleged in the action above described to have been damaged was a hotel. The defendant introduced evidence showing the gross receipts of the hotel during a certain period. Subject to an exception by the defendant, the plaintiff was allowed to read a column of payments for taxes and other matters, as prepared by the defendant's expert. Later the entire paper was put in evidence without objection. *Held*, that the exception must be overruled.

Evidence, even if inadmissible, if material and admitted without objection, properly may be considered by the jury.

If, by reason of smoke, soot, cinders and noxious odors emitted unnecessarily and unreasonably by locomotives upon an adjacent railroad, the proprietor of a hotel is unable to use a dining room in the hotel nearest the railroad, and permanently removes it to another part of the building, in an action against the

railroad company for damage caused by its wrongful acts he cannot recover for the expense of the permanent change of the dining room because the wrongful conduct of the defendant was of a temporary nature; but the effect of the conduct of the defendant upon the use of the dining-room should be considered as an element to be included in the diminished rental value of the premises, for which the plaintiff is entitled to be compensated.

In the same action the plaintiff was held to be entitled to recover for damage done to the outer walls of his building as a direct result of the defendant's wrongful emission of smoke and soot upon such walls.

At the trial of the action above described, the judge submitted to the jury four questions calling for the assessment of damages as to four distinct elements. Upon the return of their answers, he ordered them to return a general verdict for the plaintiff which included the sums found by them in answer to the two last questions, but, subject to exceptions by the plaintiff, excluded the sums found in answer to the first two questions. This court held that the damages found in answer to the first question should have been included in the general verdict. It appeared that there was evidence warranting that answer, and it further was *held* that it was unnecessary to order a new trial of that single question of damage, but that the amount found in answer to the first question should be added to the general verdict and that judgment should be entered accordingly.

TORT for damages caused to the Hotel Oxford and the Oxford Terrace, buildings owned by the plaintiffs, by the way in which the defendant during the six years preceding the date of the writ operated trains upon the railroad held by it under a lease from the Boston and Albany Railroad Company. Writ dated December 1, 1909.

The declaration originally contained three counts, only the first of which, by reason of an election made by the plaintiffs at the close of the evidence, now is material. This count is described in the opinion.

The action was referred to an auditor who filed a report and a supplemental report, and afterwards was tried before *Fessenden,* J. At the opening of the trial, after twelve jurors had been called by the clerk and before challenges by the parties were called for, two jurors were excused without objection. The clerk then called two more jurors. In calling the jurors the clerk had placed the cards containing their names on the desk in front of him. These names were printed upon twelve cards. The plaintiffs' counsel then stepped to the clerk's desk, and, in view of the clerk, designated four of the cards as containing the names of four jurors whom the plaintiffs desired to challenge. The clerk took up the cards and turned to the judge, and a conference occurred between the clerk and the judge, not heard by counsel for either party,

which was to the effect that the clerk raised the question whether the plaintiffs could challenge four, and the judge said to the clerk: "You had better proceed to read them — perhaps the defendants would not object," and that if they did object they could except.

At the conclusion of this conference the clerk turned to the jury and began to read aloud the names contained on the four cards, the order in which he read them having no reference to any preference of the plaintiffs. Jurors Neal, McCristal and Rother successively left their seats, and while they were in the act of so doing, and in their hearing, the defendant objected to the plaintiffs being permitted to have four challenges, both of the plaintiffs representing the same interest.

The matter was determined by the judge refusing, subject to an exception by the plaintiffs, to permit them to have more than two challenges, but permitted the plaintiffs to select which two of the three already named by the plaintiffs should be challenged.

A conference then occurred between the judge and both counsel, not in the hearing of the jury, at which the defendant's counsel took the position that Rother should sit on the jury; and the plaintiffs' counsel objected, on the ground that what had occurred would tend to prejudice Rother against the plaintiffs and might deprive the plaintiffs of a fair trial, and asserted that after Rother had left his seat and was passing the counsel's desk he made to the plaintiffs' counsel some sharp remark indicating feeling at his having been challenged, although his precise words were not understood. This statement was disputed by counsel for the defendant. The judge then, in the exercise of his discretion and subject to an exception by the defendant, excused Rother.

Other material evidence and the course of the trial are described in the opinion. At the close of the evidence, the defendant asked for the following among other rulings:

5. "The jury should disregard the views of the auditor as set forth in his supplemental report as to the construction of the act of the Legislature and of the law under which the Trinity Place and Huntington Avenue stations were built and used, and his finding that the operations of the railroad in connection with such stations were unnecessary and avoidable."

8. "The jury should disregard the finding of the auditor in his supplemental report that —

(a) the operations of the railroad in connection with the Trinity Place Station were unnecessary and avoidable;

(b) also the reference to his finding in his original report that the conditions he sets forth brought to the plaintiffs' property a new and different kind of annoyance;

(c) also his statement 'that the annoyance to the plaintiffs was different both in kind and degree and that they were unnecessary and avoidable';

(d) also his statement that he observed the operations of the switching engine as it distributed freight cars in the Huntington Avenue yard;

(e) also his findings of the operations of outward trains on different tracks adjacent to the plaintiffs' property."

The judge submitted to the jury special questions, which, with the jury's answers thereto, were as follows:

"Did the defendant, during the period from December 1, 1903, to December 1, 1909, substantially continuously emit upon and into the plaintiffs' buildings, known as the Hotel Oxford and the Oxford Terrace, from the stacks of locomotives on its location adjoining the said buildings, considerable quantities of smoke, soot, and cinders which it was unnecessary to emit in the reasonable operation of said locomotives and in the reasonable transaction of the defendant's business under its franchise?" The jury answered, "Yes."

"What is the amount of the damage, if any, done to the outer walls of the Hotel Oxford and the Oxford Terrace as the direct result of the defendant's wrongful emission, if any, of smoke and soot upon said walls during the period December 1, 1903, to December 1, 1909?" The jury answered, "$1,812.50. No interest."

"What was the reasonable cost of moving the old dining room in the Hotel Oxford if the sole or predominating cause of such moving was the wrongful acts of the defendant?" The jury answered, "$4,365.00, straight interest @ 4 % = $1,299.21; total, $5,664.21."

"What was the amount of the damage to the furniture of the Hotel Oxford directly resulting from the defendant's wrongful emission, if any, of smoke, soot and cinders upon said furniture during the period December 1, 1903, to December 1, 1909?" The jury answered, "$1,500.00. No interest."

"What was the amount of the diminution in the fair market rental value of the Hotel Oxford and the Oxford Terrace during the period December 1, 1903, to December 1, 1909, directly re-- sulting from the defendant's wrongful emission, if any, of smoke, soot, and cinders upon and into said buildings during said period?" The jury answered, "$65,000.00; interest at 2 % = $9,673.42; total, $74,673.42."

Upon the return of the foregoing findings upon the special questions, the judge, without objection or exception of the defendant, ordered a verdict for the plaintiffs based upon the answers of the jury to the two last questions in the amount of $76,173.42; and, subject to exceptions by the plaintiffs, refused to include in the general verdict the damage as found in the answers to the other questions assessing damages. Both parties alleged exceptions.

*J. F. Jackson & W. G. Thompson,* (*G. E. Mears* with them,) for the plaintiffs.

*E. A. Whitman,* for the defendant.

DE COURCY, J. This is an action of tort for damages to the property of the plaintiffs, including the buildings known as the Hotel Oxford and the Oxford Terrace, situated on Huntington Avenue in Boston and adjoining the tracks of the defendant's lessor, the Boston and Albany Railroad Company. The first count, on which the plaintiffs elected to go to the jury, alleged that during the six years previous to December 1, 1909, the defendant "unreasonably, carelessly and unlawfully operated locomotives," and "has caused an unreasonable and unnecessary discharge of smoke, soot, cinders, and noxious fumes from said locomotives." The claim of injury from noise, which was included in the specifications, was waived at the close of the evidence.

The case was referred to an auditor and later a trial was had in the Superior Court. A special question on the issue of liability and four questions on the issue of damages were submitted to and answered by the jury. Thereupon the presiding judge, without objection or exception, directed a verdict for the plaintiffs based upon the answers to questions numbered three and four, and ruled that they could not recover for the damage to the outer walls and for the cost of removing the old dining room in the Hotel Oxford, to which questions numbered one and two related.

We consider first the exceptions of the defendant, and in the order argued in its brief.

1. The two plaintiffs were in legal contemplation but one party, and were entitled to challenge only two jurors peremptorily. *Stone* v. *Segur,* 11 Allen, 568. But in view of the judge's opinion, that the plaintiffs were liable not to have a fair trial if the juror improperly challenged should remain on the panel, (an opinion warranted by the statement of counsel as to the remark made by that juror,) we cannot say that the informal exercise of his discretion by the judge (see R. L. c. 176, § 28) was prejudicial error. R. L. c. 176, § 32. *Commonwealth* v. *Livermore,* 4 Gray, 18.

2. The defendant contends that its rights were seriously affected by the successive rulings of the judge relative to the auditor's report, and that in any event the judge should have withdrawn from the jury those portions referred to in its fifth and eighth requests for rulings. Many passages were eliminated from the report, but at the request of the defendant the eliminated passages were read to the jury. It was contended that the opening of Trinity Place station for public use in the year 1900 greatly altered the relation of the plaintiffs' property to the railroad. The judge excluded the first portion of said fifth request, "The jury should disregard the views of the auditor as set forth in his supplemental report as to the construction of the act of the Legislature and of the law under which the Trinity Place and Huntington Avenue stations were built and used." And it seems apparent, from an examination of the charge, that the remainder, "and his finding that the operations of the railroad in connection with such stations were unnecessary and avoidable," was presented to the jury as referring only to the unnecessary smoke, soot and cinders. As to the requests numbered eight, all were given except eight (a); and here also "the operations of the railroad in connection with the Trinity Place station" were confined to the unnecessary and avoidable smoke. It should be added that the court instructed the jury with much detail to disregard the auditor's rulings of law, and all his findings with reference to or so far as they related to the second and third counts. And the report itself did not go to the jury room. These exceptions must be overruled.

3. At the close of the judge's charge counsel for the defendant called attention to the specifications as affecting the question of

liability, to the subject of the non-production of documents, and also to the failure to give many of the rulings requested; and several exceptions were taken. Many of these exceptions have not been argued, and presumably are waived; and only three requests (62–64) are specifically referred to. The question was: "Did the defendant, during the period from December 1, 1903, to December 1, 1909, substantially continuously emit upon and into the plaintiffs' buildings, known as the Hotel Oxford and the Oxford Terrace, from the stacks of locomotives on its location adjoining the said buildings, considerable quantities of smoke, soot, and cinders which it was unnecessary to emit in the reasonable operation of said locomotives and in the reasonable transaction of the defendant's business under its franchise?" See *Mellen* v. *Western Railroad*, 4 Gray, 301; *Hearst* v. *New York Central & Hudson River Railroad*, 215 N. Y. 268; *Aldworth* v. *Lynn*, 153 Mass. 53. In view of the evidence and the care with which the judge defined "substantially continuously," in connection with the specifications filed, no error is shown in this respect. The same is true of what the judge said on the subject of the non-production of documents, and of the peculiar position of the plaintiffs' property with reference to the railroad location.

The complaint that the charge did not sufficiently instruct the jury to disregard the evidence as to noise (the claim of damages therefor having been eliminated) does not seem to us well founded. They were instructed in express terms not to allow that evidence to influence them; and many times it was emphasized that the questions before them related only to the unreasonable and unnecessary excess of smoke, soot and cinders. In short, after an examination of the record we cannot say that the subject matter of the requests for rulings, so far as accurate and applicable, was not sufficiently covered in the charge. It would serve no useful purpose to consider them in detail and to quote the portions of the lengthy charge applicable to each.

In the course of a trial lasting six weeks, and complicated by the elimination of two counts in the declaration and of much of the auditor's report, it was doubtless difficult for the jury to discriminate and to disregard impressions that were not applicable to the simple and narrow issues finally submitted to them. But as a practical matter, if it appeared to the presiding judge that the

defendant's rights had not been properly safeguarded by the jury, it is to be presumed that the motion for a new trial would have been granted.

4. As to the remaining exceptions of the defendant: There was no error in the exclusion of the question to the witness Matthews, on cross-examination, as to his application for an abatement of taxes, in 1910, on other properties not nearer than a quarter of a mile to the property here in question, on other streets and not affected by the railroad. It was immaterial to the issues on trial, and the judge well might conclude that it had no direct tendency to contradict the testimony of the witness. The testimony of the witness Larry in redirect examination, that in July, 1908, he observed about one hundred engines on the New Haven road, in the vicinity of Cumberland and Durham streets, was made admissible by the earlier question of the defendant's counsel, "You have observed smoke on other roads coming into Boston, I suppose, entering Boston?" and the answer "On the New York, New Haven, & Hartford, yes." See *Shepard* v. *Hill*, 151 Mass. 540, 542. The table showing the gross receipts of the Hotel Oxford from 1885 to 1898 having been put in evidence by the defendant, the plaintiffs were allowed to read the column of payments for taxes, etc., as prepared by the defendant's expert. It is enough to say as to the exception taken thereto, that the entire paper later was put in evidence without objection. Finally, the evidence as to the extent of damage to the furniture, even if inadmissible, having gone in without objection, could be properly considered by the jury. *Damon* v. *Carrol*, 163 Mass. 404. *Rapson* v. *Leighton*, 187 Mass. 432. *Orpin* v. *Morrison*, 230 Mass. 529. It follows that the exceptions of the defendant must be overruled.

We next consider the exceptions of the plaintiffs.

1. There was no error in the ruling that the plaintiffs could not recover for the cost of removing the dining room in the Hotel Oxford. The wrongful acts of the defendant were of a temporary nature. If during their continuance the plaintiffs could not use the dining room, the loss occasioned thereby was an element to be included in the diminished rental value of the premises, and was temporary, being limited to the period of unnecessary and avoidable smoke during the six years in question. The change of location would become unnecessary when the defendant resumed the

operation of its railroad in a normal and non-negligent manner. For the expense of this permanent change in the premises the defendant is not liable in this action.

2. To the special question "What is the amount of the damage, if any, done to the outer walls of the Hotel Oxford and the Oxford Terrace as the direct result of the defendant's wrongful emission, if any, of smoke and soot upon said walls during the period December 1, 1903, to December 1, 1909?" the jury answered "$1,812.50. No interest." The first exception is to the judge's ruling that the plaintiffs could not recover on this item.

If one of the direct results of the defendant's wrongful acts was to blacken the walls by a deposit of soot, the plaintiffs were entitled to damages therefor. That element of damages was not necessarily included in the fourth question, which dealt with the diminution of rental value, and as matter of fact was not treated at the trial as so included. *Parker* v. *American Woolen Co.* 215 Mass. 176, 182. *Emery* v. *Lowell,* 109 Mass. 197. The exception to this ruling was well taken.

The record discloses however that there was evidence that it would cost $2,500 to clean off the accumulation of soot, etc., which would arise in the six years prior to the date of the writ. We cannot say that the court was wrong in admitting this testimony from a witness who had some practical experience in such matters on different buildings, and who had made investigation and obtained estimates as to this cost. The jury also viewed the premises. It seems to us that a new trial on this subordinate item of damages is unnecessary; and that the sum found by the jury ($1,812.50) should be added to that of the general verdict ($76,173.42) and that judgment should be entered for the plaintiffs as upon a verdict for the combined amount. St. 1913, c. 716, § 2. See *Simmons* v. *Fish,* 210 Mass. 563; *Burke* v. *Hodge,* 211 Mass. 156; *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 391.

*Ordered accordingly.*