MIKE BELKUS *vs.* CITY OF BROCKTON.

Plymouth.　January 9, 1933. — March 8, 1933.

Present: RUGG, C.J., PIERCE, WAIT,. DONAHUE, & LUMMUS, JJ.

*Municipal Corporations*, Liability for negligent obstruction of watercourse. *Watercourse. Damages*, In tort. *Interest. Brockton.*

Damage to premises in Brockton, occurring when they were flooded by the waters of a natural watercourse some distance away, which were backed up or held back on them in consequence of the blocking of

the flow of the stream by pipes placed therein by the city under a bridge or culvert and of a failure by the city to remove obstructions accumulated in the bed of the stream, was not a necessary result of action under St. 1888, c. 309, authorizing the adoption of a system of drainage in the city and the doing of various things incidental thereto, and did not arise from a legitimate taking of property under the statute, but could properly be found to have been due to negligence on the part of the city; and the remedy of the owner of such premises therefore was by way of an action of tort against the city· rather than a petition for damages under the statute.

A finding for the plaintiff in such an action was warranted.

In the action above described, it appeared that the plaintiff had no right to enter upon the watercourse to remove the obstructions; that the damage would cease upon their removal; that, to guard against the continued flooding, the plaintiff had raised the level of the basement floor in his premises and had lined the walls and bottom of the basement at an expense not more than was reasonably necessary to meet the conditions temporarily caused by the obstructions; and that, by reason of such changes, the basement could not be rented for the uses to which it previously had been put, and there was a diminution of the market value of the premises.  *Held,* that

(1) The cause of the damage to the plaintiff's premises not being permanent, the plaintiff could not recover the amount by which the market value thereof had been diminished;

(2) The plaintiff was entitled to recover the loss in rental value of the basement up to the date of the writ;

(3) In the circumstances, the plaintiff ·was entitled to recover the expense of making the changes in his basement, the expense being not more than was reasonably necessary to meet temporary conditions, even though the changes made were permanent in character.

The action above described was referred to an auditor whose findings of fact were to be final.  A judge of the Superior Court ordered judgment for the plaintiff in a certain sum with interest from the date of the filing of the auditor's report.  *Held,* that, although the judge properly might have awarded interest from the date of the writ, he was not required to do so, and there was no error in his award of interest.

TORT for negligent flooding of the plaintiff's premises. Writ dated June 10, 1927.

In the Superior Court, the action was referred to an auditor whose findings were to be final.  Material facts are stated in the opinion.  The action was heard by *F. T. Hammond,* J., upon the auditor's report.  The judge ordered the entry of judgment for the plaintiff in the sum of $10,367.30, and reported the action for determination by this court.

*T. W. Prince*, City Solicitor, for the defendant.

*J. W. Murdock*, for the plaintiff.

WAIT, J.    It was held in *Parker* v. *Lowell*, 11 Gray, 353, that a municipality could be held liable in tort for a negligent failure to keep a highway culvert in such condition as not to obstruct the flow of a natural watercourse, if damage was caused by a consequent flooding of the plaintiff's premises. A similar decision was rendered in *Perry* v. *Worcester*, 6 Gray, 544, where a city had set back the water of a natural watercourse by building a bridge across it in such wise that the waterway was narrowed.   The liability is not affected by the fact that the municipality is acting under authority conferred by statute, unless the statute contemplates that damage will necessarily result from the action authorized. If damage will necessarily result, then recourse must be sought by petition under the statute; and an action of tort is not the remedy.   This is so because where damage necessarily results to the property of others there is, in substance, a taking of a right of the owners which under our Constitution entitles the owners to compensation.    For this the statute must provide.   Where, however, damage is not a necessary result, but occurs because of conduct of the municipality in performing or maintaining the authorized undertaking, there is no legitimate taking of property by legislative mandate;  there is tortious action which entitles the injured person to redress from the wrongdoer.   The assumption is that the Legislature intends that the work will be so carried on, and so dealt with in maintaining it, that injury will be avoided.    *Morse* v. *Worcester*, 139 Mass. 389, 391, 392.    These principles are enforced and illustrated in *Pevear* v. *Lynn*, 249 Mass. 486, *Diamond* v. *North Attleborough*, 219 Mass. 587, *Daley* v. *Watertown*, 192 Mass. 116, *Aldworth* v. *Lynn*, 153 Mass. 53, *Bates* v. *Westborough*, 151 Mass. 174, *Stanchfield* v. *Newton*, 142 Mass. 110, *Manning* v. *Lowell*, 130 Mass. 21.   See also *Washburn & Moen Manuf. Co.* v. *Worcester*, 116 Mass. 458;  *Merrifield* v. *Worcester*, 110 Mass. 216; *Wilson* v. *New Bedford*, 108 Mass. 261.

The measure of the damages recoverable where real estate is flooded differs with circumstances.   If the injury is perma-

nent, unchanged by a cessation of the injurious action, the damage is the difference in the fair market value of the injured premises before and after the injury. *Manning* v. *Woodlawn Cemetery Corp.* 239 Mass. 5. If the injury is reasonably curable by repairs, the expense of repairs, if less than the diminished market value, is the measure of recovery. See *Matthews* v. *New York Central & Hudson River Railroad,* 231 Mass. 10. If the injury is continuous but subject to termination by later act of the wrongdoer, the measure is the lessened rental value while the injury continues. *Diamond* v. *North Attleborough,* 219 Mass. 587. *Sturtevant* v. *Ford,* 280 Mass. 303, 317, 318. If the injury is such that the injured person, by rightful action on his part, can put an end to it, the damage is the reasonable expense to which he is put and intervening loss of rental value for the period needed for removing the cause. *Cavanagh* v. *Durgin,* 156 Mass. 466, 470.

It is immaterial whether the flooding is due to an overflow from the watercourse or to saturation from interrupted run-off of surface water or from a rise in the level of the water table of underground water. See *Wilson* v. *New Bedford,* 108 Mass. 261.

The case before us is to be decided in the light of the foregoing principles. The material facts are as follows: The plaintiff's premises, lying at some distance from the borders of a natural watercourse, were flooded at various times within six years from the date of his writ, by water which backed up upon them or was raised in level and held back upon them in consequence of the raising of the level of the bottom of the watercourse or of the level of the flow in the watercourse due to blocking of the flow by pipes placed by the city under the bridge or culvert in the watercourse, and due, further, to failure to remove obstructions allowed by the city to accumulate in the bed of the watercourse. The plaintiff had no right to enter upon the watercourse to remove obstructions. In 1921, after a flooding of his cellar, he filled in the cellar bottom with cement so that the level of the cellar floor was raised. In 1926, after other floods, he put in additional cement and

lined bottom and walls of the cellar. The expense was reasonable. As a consequence of the raising of the floor level, head room was so diminished that part of the basement could not be rented for the uses to which it had been put. The market value of the buildings and land was reduced on account of the changed basement, injury to walls and liability to overflow. The city council was authorized by St. 1888, c. 309, to adopt a system of drainage; and the board of mayor and aldermen was authorized, for the purpose of surface drainage, within the city limits, to alter, change, widen, straighten and deepen the channels of any brooks or natural streams, to remove obstructions in or over them, to cover, pave or enclose them in retaining walls, as far as they judged necessary. They were given power to take and hold by purchase or otherwise such lands, water rights, dams, easements or other real estate within the limits of the city as they adjudged necessary for the purposes of the act. The act provided for recovery of damage caused. It provided that "drainage" referred to rainfall, surface and subsoil water only, and nothing in the act should be construed to authorize the discharge of refuse or polluting substances into the brooks or natural streams. No taking of land or water in or along the watercourse in question was made. Action was taken at various times, presumably under the act, to widen, straighten and clear out the course of the stream; but the pipes in the stream were not removed.

The case was heard upon the report of an auditor whose findings of fact were to be final. The court awarded damages to the plaintiff for the cost of reinforcing the cellar in 1921 and 1926, $5,225.30, and for the impairment in market value, $5,142, and ordered judgment for $10,367.30 with interest from December 16, 1931. The plaintiff contends that he is entitled also to loss of rental of the basement for five years, and of stores in the building for a like period, which the auditor found to be $3,000 and $900, respectively, and, further, to interest from the date of the writ, June 10, 1927, rather than from December 16, 1931, the date of filing the auditor's report. The defendant

contends that the proper measure of damages if liability existed was the lessened rental value for the years before suit was brought, and that the city was not liable. Both claimed and filed exceptions. The case is before us upon report by the trial judge. If his rulings and failure to rule were proper, then judgment for the plaintiff in $10,367.30 with interest from December 16, 1931, is to enter. If the judge was in error, then such judgment is to enter as law and justice may require.

There was no error in the failure to deal specifically with each of the defendant's thirteen requests. The finding for the plaintiff for the items of damage stated established conclusively that the rulings of law requested were either denied or immaterial, and that so far as the requests involved findings of fact, the fact was immaterial or the judge found to the contrary.

A finding for the plaintiff was justified. There was no taking under the statute. The action authorized by the statute could be performed by the city without inflicting this damage. Its occurrence could be found to be due to negligence in allowing pipes to obstruct the flow of the stream, and in failing to clear the course made narrower and shallower through lack of care. An action of tort was thus a proper remedy where damage appeared. Inasmuch as the cause of trouble was not permanent and damage would cease on its removal, the diminished market value of the premises was not a proper measure of damage. *Diamond* v. *North Attleborough*, 219 Mass. 587.

The changes in the cellar effected a change in the earning power of the buildings. In so far as those changes were reasonably necessary to guard against continued flooding, the plaintiff was entitled to recover the reasonable expense, not exceeding the reduction in market value of the premises. As the premises were rendered less valuable for renting, and because the changes were found to be reasonably necessary, the loss of rental value while the flooding continued and up to the date of the writ was a proper element of damage. The rule is well illustrated in *Matthews* v. *New York Central & Hudson River Railroad*, 231 Mass. 10.

There damages were recovered for injuries from smoke which had extended through a series of years. The plaintiff had been led to incur expense in making a permanent change in the position of the dining room of his hotel to avoid the damage. The court allowed the reasonable cost of a removal to a place unaffected or less affected by the smoke; but since the change made was permanent, not limited in time to the duration of the nuisance, we refused to allow the full expense of a permanent change. In the case before us, although the change was permanent in nature, it does not appear that the expense incurred in the reinforcing of the cellar was greater than was necessary to meet the temporary conditions. Had it been greater the excess could not be recovered. In the *Matthews* case diminished rental value pending the nuisance was allowed in addition to cost of temporary removal. We think that precedent should have been followed here.

If the judge had thought proper he could have given interest from the date of the writ, *Young* v. *New York, New Haven & Hartford Railroad*, 273 Mass. 567, 571, 572, but he was not bound to do so. *Peabody* v. *New York, New Haven & Hartford Railroad*, 187 Mass. 489. We cannot properly say he was in error in his finding.

It follows that there was error in including the diminished market value of the building in the damages. The auditor reports findings of $3,000 for loss of rental value of the basement and of $900 for similar loss of value in the stores in the building during the years from 1921 to 1926. These we think should stand; and the amounts were recoverable since the cause of injury continued until the sale of the premises in 1926. Judgment should enter for the plaintiff in $9,125.30 with interest from December 16, 1931.

*So ordered.*