No. 2872 Northern Essex, ss.

HEALY (Edward H. J. Wilson, J. Frank Hughes)
v. TOWN OF DANVERS (William F. Sullivan)

From the First District Court of Essex—Hill, J.

Argued April 15, 1941—Opinion Filed May 26, 1941

HENCHEY, J. (Pettingell, A.P.J., & Wilson, J.)—This is an action of tort in which the plaintiff seeks to recover damages for injuries to his real estate, alleged to have been caused thereto by the overflowing of water from certain drains and culverts.

The plaintiff lived at No. 50 Lawrence Street, a public way in the defendant town, Lawrence Street ran north and south and the plaintiff's house was on the easterly side. Adjacent to and north of the plaintiff's house the plaintiff owned some vacant land. To the north and south of the plaintiff's land Lawrence Street is elevated, thus surface waters on Lawrence Street gather approximately in front of the plaintiff's property and at times have entirely flooded the street and overflowed onto the plaintiff's land. There were no drains on Lawrence Street to take care of this situation.

For a number of years the plaintiff complained to the town about the flooding of his land. On July 18, 1928, at a town meeting, it was voted to appropriate $300 for the installation

of a drain across the plaintiff's land, the plaintiff having signed an instrument which purported to grant the Town the right to enter upon his land and construct this drain. The instrument also released the Town from "all damages" caused by reason of this construction. A second instrument was prepared which more clearly set out the rights of the parties and granted the Town the right to enter upon the plaintiff's land, and construct a drain to conduct the surface water from Lawrence Street. It further released the Town from all damages arising from this construction.

Thereupon, in 1929, Austin Littlefield, Town Superintendent of Streets, surveyed the land, and supervised the laying of the drain, which ran from Lawrence Street into the ditch on the Boston & Maine land. This ditch was supposed to drain through a culvert which ran under the railroad tracks. This culvert became clogged and some time after the drain was constructed, the ·plaintiff complained that his land was being flooded. The Town made some efforts, without much success, to clean out the culvert. The erection of the drain took care of the surface drainage of Lawrence Street for the time being, but, in so doing, it actually increased the flow of water across the plaintiff's land far beyond the capacity of the culvert when obstructed.

The plaintiff's complaints continued until 1936, when an attempt to solve the problem of street drainage was instituted by an E. R. A. and then a W. P. A. project which was handled generally by the local W. P. A. Co-ordinator under the immediate supervision of the Assistant Superintendent of Streets, who was delegated to the task by Superintendent Littlefield. New catch basins were constructed in Lawrence Street and a new drain was laid across the plaintiff's land in the same location as the first drain. The plaintiff took a great interest in the work and made some suggestions which were adopted, one of which required the construction of an additional catch basin on Lawrence Street.

Because of the increased flow of water resulting from the new catch basins and from the new drains, and because the culvert in its clogged and broken condition could not accommodate the surface waters, the plaintiff's land was flooded and his house damaged. The trial judge specifically found that the small diameter of the culvert, even if clear, could not care for the increased flow of water from the new drains, that the flooding of the plaintiff's land "was the result of improper laying out of the whole plan rather than of negligent or improper work of construction," and that the "plan should have contemplated an increase in the size of the culvert even though it was not on land of the Town; hence there was a defect in the plan as adopted."

After many complaints from the plaintiff, a new culvert was built by the Boston & Maine Railroad, and since that time no flooding has occurred.

[ 41 ]

It was agreed at the trial that Littlefield was properly appointed Superintendent of Streets and, as such, had the powers, and performed the duties of Road Commissioner or Surveyor of Highways. The trial judge found that he was a public officer charged with statutory duties, and not acting as a mere agent of the Town. Accordingly, the trial judge found for the defendant. At the appropriate time both the plaintiff and defendant filed certain requests for rulings, some of which were allowed and others denied.

The plaintiff now claims to be aggrieved by the trial judge's rulings and refusals to rule as requested, and especially by his refusal to grant requests to the effect that the Town committed a trespass by overloading the culvert, that the construction of the drains was done unlawfully and by one for whose conduct the Town was responsible.

We can find no fault with the conclusion of the trial judge. There are two factors which, in our opinion, are decisive. In the first place, it was agreed at the trial that Littlefield was properly appointed Superintendent of Streets. G. L. c. 41, s. 66, and the amendments thereto, provide for the appointment of a Superintendent of Streets, and G. L. c. 83, s. 4, authorizes "officers having charge of highways" to construct drains "through any land." It is the established law of this Commonwealth that a superintendent of streets, such as Littlefield in the instant case, is a public officer and, in the performance of his statutory duties, does not act as agent of the town. *Sherman* v. *Swansea*, 261 Mass. 407; *Daddario* v. *City of Pittsfield*, 301 Mass. 552.

The second important factor is the finding of the trial judge that the flooding "was the result of improper laying out of the plan rather than of negligent or improper work of construction." This finding of fact has support in the evidence, especially when we consider that the flooding ceased when a new culvert was constructed by the Boston & Maine Railroad. In such case, we cannot disturb this finding. *Seager* v. *Drayton*, 217 Mass. 571; *Schon* v. *Odd Fellows Building Association*, 255 Mass. 465.

With these two elements established, we can readily apply the now well-defined rule of law that a municipality is not responsible for damages which accrue to individuals because of any defect or inadequacy of its system of sewers. *Diamond* v. *Inhabitants of North Attleborough*, 219 Mass. 587; *Pevear* v. *City of Lynn*, 249 Mass. 486; *Anglin* v. *City of Brockton*, 278 Mass. 90; *Bradley* v. *City of Marlboro*, 296 Mass. 253.

Inasmuch as the town owned none of the land which caused or contributed to the trouble, there can be no question of a nuisance. *Gosselin* v. *Town of Northbridge*, 296 Mass. 351.

As for the allegation that the work was done illegally, we need only to refer to the instruments, signed by the plaintiff, giving the Town permission to perform work on his land.

Report dismissed.