GUARANTY-FIRST TRUST COMPANY *vs.* TEXTRON, INC.

Suffolk. May 5, 1993. - November 4, 1993.

Present: WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Statute*, Construction. *Massachusetts Oil and Hazardous Material Release Prevention Act. Negligence*, Economic loss. *Real Property*, Lease, Environmental damage. *Damages*, Hazardous waste contamination.

This court concluded that, if a private party established that the previous owner of its property was responsible for hazardous materials on the property, the measure of damages recoverable under G. L. c. 21E, § 5 (*a*) (iii), would not include the party's loss of the rent it would have received under a proposed five-year lease of the property, but, as at common law, would include the party's loss of rent only to the extent that the lost rent represented lost rental value for the period of time reasonably necessary to repair the damage to the property. [334-339]

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Lee H. Glickenhaus* for the plaintiff.

*Stephen H. Oleskey* (*Robyn B. Klinger* with him) for the defendant.

O'CONNOR, J. This case raises the issue of the appropriate measure of recovery to which a private party is entitled under G. L. c. 21E, § 5 (*a*) (iii) (1992 ed.), for damage to real or personal property caused by a release or threat of release of hazardous material. A judge of the United States District Court for the District of Massachusetts certified to us, pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981), the following question: "If the Bank [Guaranty-First Trust Company] establishes that the Previous Owner [Textron, Inc., the former owner of the Bank's property] is responsible for hazardous materials on the Property, will the

measure of recovery for 'damage to the Bank's real or personal property incurred or suffered as a result of such release or threat of release' of hazardous material, under M.G.L. c. 21E, § 5(a)(iii), include the Bank's loss of rent it would have received under [a] proposed five-year lease?" We answer this question, "No." The measure of recovery under G. L. c. 21E, § 5 (*a*) (iii), is identical to the measure of recovery at common law for damage to real or personal property. Under G. L. c. 21E, § 5 (*a*) (iii), as at common law, the Bank is entitled to recover lost rent only to the extent that the loss of rent represents lost rental value for a period of time reasonably necessary to repair the damage.[1]

For the purpose of obtaining an answer to the certified question, the parties have agreed on the following facts. Hazardous materials have been found in the soil and groundwater at 340 South Main Street and 26 Edward Street in Mansfield (property). The defendant (Textron) purchased the property in 1968. The Gorham division of Textron operated a facility at the property from 1968 through 1982, and, in the course of these operations, used certain chemicals and substances which are "hazardous materials" within the meaning of G. L. c. 21E. Releases of hazardous materials, within the meaning of G. L. c. 21E, occurred at the property during this period.

Textron sold the property to Pringle Realty Trust (Pringle) in 1985, and the Bank acquired ownership from Pringle in 1989 by foreclosing on a mortgage it had issued on the property. The Bank had not required an environmental site assessment from Pringle or performed its own assessment before issuing the mortgage.

Subsequently, the Bank negotiated a five-year lease of the property with the Straight Foundation, Inc. (Straight). Straight requested that the Bank commission an environmen-

---

[1] In 1991 and 1992, the Legislature enacted significant additions to G. L. c. 21E. See St. 1991, c. 476, §§ 1-10; St. 1992, c. 133, §§ 271-313. Our response to the certified question is unaffected by the statutory amendments.

tal site assessment of the property, and refused to execute the lease when the assessment revealed contamination.

The Bank and Textron are attempting to resolve the matter by settlement. Textron has reimbursed the Bank for costs it has incurred in connection with remedying the contamination of the property, and has agreed to perform all future necessary response actions. There is no evidence that any permanent injury has occurred to the property. The unresolved dispute between the parties is whether the Bank's lost rental income from Straight is recoverable under G. L. c. 21E, § 5 (*a*) (iii). We resolve this question by reference to the language of the statute, viewed in light of the purposes for which it was enacted, and by reference to the underlying common law. See *First E. Bank, N.A.* v. *Jones*, 413 Mass. 654, 659 (1992); *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, 407 Mass. 123, 128-129 (1990), *S.C.*, 412 Mass. 309 (1992).

General Laws c. 21E, § 5 (*a*) (iii), provides a property owner with a strict liability claim against certain classes of persons for "damage to his real or personal property incurred or suffered as a result of [a] release or threat of release" of hazardous materials. Textron does not here dispute its liability to the Bank under G. L. c. 21E, § 5 (*a*) (iii), for contamination that occurred while its Gorham division operated a facility on the property. It argues, however, that under the plain and ordinary meaning of the language of G. L. c. 21E, § 5 (*a*) (iii), the statutory strict liability claim for damages does not extend to consequential damages such as lost rent. Such damages, Textron says, represent damages to an individual's economic interests rather than damages to property. Textron argues further that the legislative history and remedial purpose of G. L. c. 21E indicate that consequential economic damages such as lost rent are beyond the scope of the claim created by G. L. c. 21E, § 5 (*a*) (iii). Finally, Textron contends that the question whether the Bank might recover for lost rent at common law is inapposite since G. L. c. 21E was intended to supplement the common law and does not explicitly incorporate common law concepts.

While we agree that G. L. c. 21E, § 5 (*a*) (iii), does not create a claim for economic loss independent of a claim for damage to tangible real or personal property, see *Garweth Corp.* v. *Boston Edison Co.*, 415 Mass. 303, 307 (1993), we conclude that the appropriate measure of recovery for "damage to [a property owner's] real or personal property" under G. L. c. 21E, § 5 (*a*) (iii), must be determined by reference to common law. In *Garweth*, we held that the scope of the claim created by G. L. c. 21E is not so expansive as to include recovery for economic loss absent physical damage to the plaintiff's property. *Id.* Thus, Garweth had no claim for monetary damages incurred by a forced delay in its ability to complete contract work because "[n]one of the released oil contaminated or damaged any tangible or real property owned by Garweth." *Id.* Here, in contrast, the Bank has suffered an economic loss directly resulting from physical damage to its real property. The question for the court is how appropriately to measure the damage to real property. We hold that the Bank's lost rent is recoverable under G. L. c. 21E, § 5 (*a*) (iii), to the extent it constitutes part of the common law remedy for damage to real property.

The Legislature's primary purpose in enacting G. L. c. 21E was to improve the Commonwealth's capability to respond to environmental contamination and to recover response costs from persons responsible for the contamination. See St. 1983, c. 7, emergency preamble. By explicitly creating a private right of action for damage to real or personal property, the Legislature indicated that another purpose in enacting G. L. c. 21E was to enable private individuals to obtain a certain measure of compensation for loss resulting from environmental damage. "[S]tatutory language itself is the principal source of insight into the legislative purpose." *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977).

The Bank argues that, since a lease is an interest in property, the loss of a lease due to environmental contamination falls within the scope of the type of damage intended to be compensated under G. L. c. 21E, § 5 (*a*) (iii). The measure of recovery from Textron, the Bank says, should therefore

include the full value of the lost lease. Textron, in turn, argues that G. L. c. 21E, § 5 (*a*) (iii), is designed to remedy only the physical damage suffered by the property. In support of its position, Textron points to the Legislature's omission of a proposed amendment, which would have explicitly provided liability for damages for economic loss, as an indication that there should be no recovery for lost rent. We are not persuaded by either of these approaches. The language of G. L. c. 21E, § 5 (*a*) (iii), provides a strict liability cause of action for "damage to [a property owner's] real or personal property." The phrase "damage to . . . real or personal property" is not further defined in the statute. There is no reason to assume that the Legislature intended the scope or measure of damage to be different than it is at common law. While the statute supplements the common law by providing a new strict liability remedy for damage to real or personal property, it is silent on the scope and measure of damages for this new right of action. We therefore read G. L. c. 21E, § 5 (*a*) (iii), in light of the common law that existed at the time the statute was enacted by the Legislature. "A statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." *Pineo* v. *White*, 320 Mass. 487, 491 (1946). See *Commercial Wharf E. Condominium Ass'n, supra* at 129; *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984); *Zoulalian* v. *New England Sanatorium & Benevolent Ass'n*, 230 Mass. 102, 105 (1918). See also Cox & Bachrach, Damages for Contaminated Property, 37 B.B.J. 19 (Aug. 1993).

At common law, "[t]he general rule for measuring property damage is diminution in market value." *Trinity Church in the City of Boston* v. *John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 48 (1987), *S.C.*, 405 Mass. 682 (1989). However, "[i]f the injury is reasonably curable by repairs, the expense of repairs, if less than the diminished market value, is the measure of recovery." *Belkus* v. *Brockton*, 282 Mass. 285, 288 (1933). A party suffering property damage may also recover for loss of use. *McDonough* v. *Whalen*, 365 Mass. 506, 514 (1974). Lost rent is therefore an appropriate

part of the remedy for damage to real property to the extent it represents diminution in market value or loss of use. See generally *Belkus, supra* at 287-288. Thus, where damage to real property is not permanent, the measure of recovery is the reasonable expense of repairing the injury plus the intervening loss of rental value for the period reasonably needed to repair the injury. *Id.* at 288. See *Chesarone* v. *Pinewood Builders, Inc.*, 345 Mass. 236, 242 (1962) (holding that, where property would be returned to its prior, undamaged condition by an injunction to end a trespass, the plaintiff was entitled to recover lessened rental value for the period that the injury continued). Cf. *Omni Flying Club, Inc.* v. *Cessna Aircraft Co.*, 366 Mass. 154, 162 (1974) (plaintiff may recover reasonable rental value of inoperable airplane during the period of time needed for repair); *Antokol* v. *Barber*, 248 Mass. 393, 396-397 (1924) (plaintiff may recover the loss of use of an automobile damaged by collision during period of repair).

The Bank, although it recognizes the necessity of turning to the common law to define "damages to . . . real or personal property" under G. L. c. 21E, § 5 (*a*) (iii), fails to acknowledge that a party whose real property has been damaged is not necessarily entitled to the full value of a lost lease. Applying the common law principles outlined above, we hold that the Bank is only entitled to diminished rental value for the period of time reasonably necessary for the contamination to be removed. As the United States District Court for the District of Massachusetts has previously observed in the context of curable damage to personal property, the general requirement that a party seeking damages take reasonable action to limit or mitigate damages "translates into the rule that recovery for loss of use is limited to the time reasonably necessary to make repairs." *Urico* v. *Parnell Oil Co.*, 552 F. Supp. 499, 501 (D. Mass. 1982), aff'd, 708 F.2d 852 (1st Cir. 1983). While "this is not an absolute rule," *id.*, particularly where an injured party is unable to finance repairs and a defendant refuses to pay, the Bank has not to our knowledge demonstrated circumstances warrant-

ing recovery for loss of use beyond the time actually necessary to make repairs. See *id.*

General Laws c. 21E, § 4 (1992 ed.), permits a "person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material" to be reimbursed "from any other person liable for such release or threat of release." The Bank argues that, in order to avoid redundancy between G. L. c. 21E, §§ 4 and 5, § 5 (*a*) (iii) must be read as permitting an injured party to recover lost rent and not merely response costs.[2] Even were we to adopt Textron's position and hold that G. L. c. 21E, § 5 (*a*) (iii), does not permit recovery of any loss other than physical damage, the two sections would not be redundant. Section 4 allows a person to seek reimbursement for response costs from other responsible persons once those costs are actually incurred, while § 5 allows an injured property owner to bring suit regardless of whether costs have already been incurred. Thus, as Textron observes, the two sections provide standing to sue to two different classes of persons. In addition, response costs, while including the costs of "cleanup or removal of released oil or hazardous materials from the environment," G. L. c. 21E, § 2 (defining "[r]emove"), do not necessarily represent all the costs of remedying physical damage to property since restoration or repair work may remain. Our interpretation of the statute, using the underlying common law to define "damage . . . to real or personal property," a fortiori does not render §§ 4 and 5 redundant since an injured property owner may be able to recover for loss of use at common law. Moreover, while at common law the expense of repairs for a curable injury is only recoverable if less than the diminished market value of the damaged property, *Belkus, supra* at 288, § 4 places no such limit on the recovery of response costs. See generally Cox & Bachrach, *supra* at 19-20.

---

[2]Although the Bank argues from the version of G. L. c. 21E, § 4, inserted by St. 1983, c. 7, § 5, the thrust of its argument is unaffected by the 1992 amendments to that section.

For the reasons stated above, we conclude that the measure of damages under G. L. c. 21E, § 5 (*a*) (iii), as at common law, includes the Bank's loss of rent only to the extent that the lost rent represents lost rental value for the period of time reasonably necessary to repair the damage to the property.

The question certified is answered in the negative.