BETSEY WESSON *vs.* WASHBURN IRON COMPANY.

In an action to recover damages to an inn, from a nuisance, by carrying on works and operating machinery in the neighborhood, which shook the building and prevented guests from sleeping, evidence is incompetent on the part of the plaintiff to show that frequently uests, on leaving the inn at night and seeking other lodgings, declared that they did so because they were prevented from sleeping by the jar. And evidence is incompetent on the part of the defendants to show that, in the opinion of witnesses who were familiar with the locality, and who had bought, sold and let real estate in the vicinity, the effect of the stopping of the defendants' works would be to diminish materially the value of the plaintiff's premises for occupation, although the plaintiff has introduced evidence to show that operating the defendants' works has diminished the rentable value of his premises.

An action may be maintained to recover damages for a nuisance to a dwelling-house, caused by carrying on works and operating machinery in the vicinity, which fill the air with smoke and cinders, and render it offensive or injurious to health, and shake the building so as to injure it and render its occupation uncomfortable, although all persons owning estates in the vicinity have sustained similar injuries from the same cause. It is only when the nuisance complained of is an invasion of some common or public right that the remedy is confined to a public prosecution.

TORT. The first count of the declaration alleged that the plaintiff was owner of a freehold estate in a messuage and

dwelling-house in Worcester, contiguous to the land and buildings of the defendants, and occupied as a dwelling-house for the plaintiff's tenants; and the defendants wrongfully kept and continued certain buildings, called and used for a rolling mill and foundery, next easterly from the land of the plaintiff, and occupied by the defendants for the manufacture of railroad iron, and other articles made from iron and steel, and kept and used large stationary steam-engines, trip-hammers, rolling mills, and other machinery and furnaces for the melting of iron, &c., by night as well as by day, and made large quantities of railroad iron, and other articles made from iron and steel, and thereby, and by the action and motion of the said engines, mills and machinery, the ground and dwelling-house of the plaintiff were greatly shaken and jarred, so that the house was greatly shaken to pieces and rendered uncomfortable and unfit for habitation and of no value.

The second count contained similar allegations in regard to another messuage and dwelling-house, known as the Wesson Tavern House, with additional averments that the defendants consumed large quantities of coal, by means of which large quantities of coal-dust, smoke and ashes, noisome and offensive, rose and issued from the defendants' buildings and entered into and diffused themselves over and through the plaintiff's premises, rendering the same uncomfortable and unfit for habitation, and depriving her of the gains which she otherwise would have made.

The answer denied all wrongful acts on the part of the defendants, and all injury to the plaintiff.

At the trial in this court, before *Colt*, J., the plaintiff introduced evidence tending to show that she had an estate for life in two dwelling-houses adjacent to premises used and occupied by the defendants for a rolling mill for the manufacture of railroad iron; that during the period complained of great quantities of smoke, cinders and dust came constantly from the defendants' works into said houses, to an extent, when the wind was east, enough to suffocate persons, making the houses black inside and out, covering the bed-clothes and table-cloths with dust, and making the houses uncomfortable and unfit for

habitation; that the defendants kept constantly in operation, by night and day, a trip-hammer capable of striking a blow of from seventy-five to one hundred tons, the effect of which was to jar the houses so as to cause the plastering to crack and fall down repeatedly, so that no clock could run in one of the houses; that one of the houses had formerly been used as a tavern, but its use as such had been discontinued since the use of the trip-hammer, except that guests were occasionally received, who, after going to bed, had frequently come down late at night and gone to another hotel.

The plaintiff offered to show that these guests, on coming down stairs with their carpet-bags, said that they did not stay in their rooms because they were prevented from sleeping by the jar; but the evidence was excluded.

The plaintiff's counsel, in opening the case, stated, as one of the grounds for damages, that the operation of the defendants' works had diminished the rentable value of her property, and its value for occupation; and evidence was introduced in support of this claim. The defendants called several witnesses who testified that they were familiar with the locality in which the premises of the plaintiff and defendants were situated, and had bought, sold and let real estate in that vicinity for a number of years, and were acquainted with its value; and the question was thereupon put to them, " What would have been the effect of the stoppage of the works of the defendants upon the value for occupation of the houses of the plaintiff " during the period complained of? This question was objected to by the plaintiff, but allowed; and the witnesses answered that, in their opinion, it would have diminished the value materially.

It was admitted by the plaintiff that the defendants' works were erected in a proper locality, were properly constructed for the business carried on, and were properly managed, except as far as they interfered with her rights. The jury were taken to view the premises, in the daytime and in the evening, while the defendants' works were in operation. There was no evidence tending to show the extent and nature of the injury to other persons or property, except wnat the jury may have seen upon the

view; and at the trial the defendants' counsel disclaimed that any evidence offered by them in court was offered for the purpose of showing that it was a public nuisance, claiming that there was no injury to any one.

The plaintiff requested the court to instruct the jury that if her dwelling-house was injured by jarring and shaking, and rendered unfit for habitation by smoke, cinders, dust and gas from the defendants' works, it was no defence to the action that many other houses in the neighborhood were affected in a similar way. But the judge declined so to rule, and instructed the jury, in accordance with the request of the defendants, that the plaintiff could not maintain this action if it appeared that the damage which the plaintiff had sustained in her estate was common to all others in the vicinity; but it must appear that she had sustained some special damage, differing in kind and degree from that common to all others in the neighborhood.

The jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

*G. F. Hoar,* ( *G. F. Verry* with him,) for the plaintiff, cited, to the point that the limitation stated by the court, in the instructions to the jury, is only found in cases where the plaintiff complained of a special injury resulting from the infringement of a public right, Co. Litt. 56 ; *Williams's case,* 5 Co. 72 ; *Iveson* v. *Moor,* Com. R. 58 ; *S. C.* 1 Salk. 15 ; *Payne* v. *Partridge,* 1 Salk. 12 ; *Chichester* v. *Lethbridge,* Willes, 71 ; *Rose* v. *Groves,* 5 Man. & Gr. 613 ; *The King* v. *Dewsnap,* 16 East, 194 ; *Wilkes* v. *Hungerford Market Co.* 2 Bing. N. C. 281 ; *Rose* v. *Miles,* 4 M. & S. 101 ; *Smith* v. *Boston,* 7 Cush. 254 ; *Brown* v. *Perkins,* 12 Gray, 89 ; *Harvard College* v. *Stearns,* 15 Gray, 1 ; *Clark* v. *Saybrook,* 21 Conn. 326 ; that the prevention of a multiplicity of suits is no reason for denying a remedy in a case like this, *Ashby* v. *White,* 2 Ld. Raym. 955 ; 1 Hilliard on Torts, 77, and cases there cited ; that evidence of the opinion of witnesses as to the probable effect of stopping the defendants' works was incompetent, *New England Glass Co.* v. *Lovell,* 7 Cush. 319; *Perkins* v. *Augusta Co.* 10 Gray, 324 ; *White* v. *Ballou,* 8 Allen, 408; *Call* v. *Allen,* 1 Allen, 137 ; and that the declarations of

the guests, when leaving the plaintiff's house, were admissible, *Shrewsbury* v. *Smith*, 12 Cush. 177; *Lund* v. *Tyngsborough*, 9 Cush. 36; *Marcy* v. *Stone*, 8 Cush. 4; *Commonwealth* v. *M'Pike*, 3 Cush. 181; *Salem* v. *Lynn*, 13 Met. 546; *Salisbury* v. *Gourgas*, 10 Met. 442.

*F. H. Dewey*, (*E. B. Stoddard* with him,) for the defendants. 1. The declarations of the guests were properly excluded. 1 Greenl. Ev. § 109. *Nutting* v. *Page*, 4 Gray, 584. 2. The evidence of the probable effect of stopping the defendants' works was competent. *Call* v. *Allen*, 1 Allen, 137. *Kendall* v. *May*, 10 Allen, 67. *Vandine* v. *Burpee*, 13 Met. 288. 3. The instruction of the court to the jury was correct. Co. Litt. 56. *Stetson* v. *Faxon*, 19 Pick. 154. If the instruction of the court was incorrect, it did the plaintiff no harm in this case, as it appears by the exceptions that there was no testimony tending to show the extent and nature of the injury to other persons or property, and at the trial the defendants' counsel disclaimed that any evidence was offered by him for the purpose of showing that it was a public nuisance.

BIGELOW, C. J.   Two objections to the rulings of the court relative to the competency of evidence are now insisted on.

1. It appeared at the trial that one of the plaintiff's houses, which was alleged to have been injured by the acts of the defendants, had been used as an inn ; and that persons who had been received there as guests sometimes came down from their lodging rooms at a late hour of the night, and went to another inn.   The plaintiff offered to prove the reasons assigned by these guests, while they were coming down stairs, for abandoning their rooms and seeking lodgings elsewhere.   This evidence was rejected ; and we are of opinion that it was incompetent.   The statements were not of a nature to explain or give character to the act which they accompanied.   They were merely declarations of a previously existing fact or state of things which operated on the minds of the persons who uttered them, and induced them to leave the house ; but they had no tendency whatever to show that this act, of itself clear and unequivocal, should have any different signification or effect than that which should be

given to it if proved as an independent fact, irrespectively of the statements which accompanied it. The declarations were therefore hearsay evidence, and, although it would have been competent to show by direct proof of the fact that lodgers in the house were disturbed and induced to leave it by reason of the acts of the defendants, it could not be shown by their statements to third persons. *Nutting* v. *Page*, 4 Gray, 584.

2. The other objection to the competency of evidence presents a question of more difficulty. But, upon consideration, we think that the opinions of witnesses as to the effect of the discontinuance of the defendants' works on the value for occupation of the plaintiff's houses were too speculative and conjectural to be admissible, as coming within the range allowed to the testimony of experts. It is to be observed that the question put to the witnesses was not as to the actual present value of property, or as to the extent of damage already actually done by the acts of the defendants, as in *Vandine* v. *Burpee*, 13 Met. 288. But the inquiry was directed to the probable damage which would ensue to the plaintiff's property in the happening of a contingency which might never occur. In *Call* v. *Allen*, 1 Allen, 137, it was proved that the plaintiff had actually lost tenants by the existence of the alleged nuisance, and that his property had thereby become reduced in value. In reply to this evidence, the defendant was permitted to show that the discontinuance of his works would cause the removal of a certain class of tenants from the neighborhood, and thereby operate to diminish the rentable value of the plaintiff's houses. But the inquiry did not extend further, as in the case at bar, so as to embrace the mere abstract opinions of witnesses concerning the extent of such diminution by the introduction of estimates founded on a mere conjectural basis.

3. The more interesting question remains to be considered, whether the instructions under which the case was submitted to the jury were correct and appropriate to the facts in proof.

There can be no doubt of the truth of the general principle stated by the court, that a nuisance may exist which occasions an injury to an individual, for which an action cannot be

maintained in his favor, unless he can show some special damage in his person or property, differing in kind and degree from that which is sustained by other persons who are subjected to inconvenience and injury from the same cause. The difficulty lies in the application of this principle. The true limit, as we understand it, within which its operation is allowed, is to be found in the nature of the nuisance which is the subject of complaint. If the right invaded or impaired is a common and public one, which every subject of the state may exercise and enjoy, such as the use of a highway, or canal, or public landing place, or a common watering place on a stream or pond of water, in all such cases a mere deprivation or obstruction of the use which excludes or hinders all persons alike from the enjoyment of the common right, and which does not cause any special or peculiar damage to any one, furnishes no valid cause of action in favor of an individual, although he may suffer inconvenience or delay greater in degree than others from the alleged obstruction or hindrance. The private injury, in this class of cases, is said to be merged in the common nuisance and injury to all citizens, and the right is to be vindicated and the wrong punished by a public prosecution, and not by a multiplicity of separate actions in favor of private individuals. Several instances of the application of this rule are to be found in our own reports. *Stetson* v. *Faxon*, 19 Pick. 147. *Thayer* v. *Boston*, 19 Pick. 511, 514. *Quincy Canal* v. *Newcomb*, 7 Met. 276, 283. *Holman* v. *Townsend*, 13 Met. 297, 299. *Smith* v. *Boston*, 7 Cush. 254. *Brainard* v. *Connecticut River Railroad*, 7 Cush. 506, 511. *Blood* v. *Nashua & Lowell Railroad*, 2 Gray, 140. *Brightman* v. *Fairhaven*, 7 Gray, 271. *Harvard College* v. *Stearns*, 15 Gray, 1. *Willard* v. *Cambridge*, 3 Allen, 574. *Hartshorn* v. *South Reading*, Ib. 501. *Fall River Iron Works Co.* v. *Old Colony & Fall River Railroad*, 5 Allen, 224.

But it will be found that, in all these cases, and in others in which the same principle has been laid down, it has been applied to that class of nuisances which have caused a hindrance or obstruction in the exercise of a right which is common to every person in the community, and that it has never

been extended to cases where the alleged wrong is done to private property, or the health of individuals is injured, or their peace and comfort in their dwellings is impaired by the carrying on of offensive trades and occupations which create noisome smells or disturbing noises, or cause other annoyances and injuries to persons and property in the vicinity, however numerous or extensive may be the instances of discomfort, inconvenience and injury to persons and property thereby occasioned. Where a public right or privilege common to every person in the community is interrupted or interfered with, a nuisance is created by the very act of interruption or interference, which subjects the party through whose agency it is done to a public prosecution, although no actual injury or damage may be thereby caused to any one. If, for example, a public way is obstructed, the existence of the obstruction is a nuisance, and punishable as such, even if no inconvenience or delay to public travel actually takes place. It would not be necessary, in a prosecution for such a nuisance, to show that any one had been delayed or turned aside. The offence would be complete, although during the continuance of the obstruction no one had had occasion to pass over the way. The wrong consists in doing an act inconsistent with and in derogation of the public or common right. It is in cases of this character that the law does not permit private actions to be maintained on proof merely of a disturbance in the enjoyment of the common right, unless special damage is also shown, distinct not only in degree but in kind from that which is done to the whole public by the nuisance.

But there is another class of cases in which the essence of the wrong consists in an invasion of private right, and in which the public offence is committed, not merely by doing an act which causes injury, annoyance and discomfort to one or several persons who may come within the sphere of its operation or influence, but by doing it in such place and in such manner that the aggregation of private injuries becomes so great and extensive as to constitute a public annoyance and inconvenience, and a wrong against the community, which may be properly the subject of a public prosecution. But it has never been held, so far

as we know, that in cases of this character the injury to private property, or to the health and comfort of individuals, becomes merged in the public wrong, so as to take away from the persons injured the right which they would otherwise have to maintain actions to recover damages which each may have sustained in his person or estate from the wrongful act.

Nor would such a doctrine be consistent with sound principle. Carried out practically, it would deprive persons of all redress for injury to property or health, or for personal annoyance and discomfort, in all cases where the nuisance was so general and extensive as to be a legitimate subject of a public prosecution; so that in effect a wrongdoer would escape all liability to make indemnity for private injuries by carrying on an offensive trade or occupation in such place and manner as to cause injury and annoyance to a sufficient number of persons to create a common nuisance.

The real distinction would seem to be this : that when the wrongful act is of itself a disturbance or obstruction only to the exercise of a common and public right, the sole remedy is by public prosecution, unless special damage is caused to individuals. In such case the act of itself does no wrong to individuals distinct from that done to the whole community. But when the alleged nuisance would constitute a private wrong by injuring property or health, or creating personal inconvenience and annoyance, for which an action might be maintained in favor of a person injured, it is none the less actionable because the wrong is committed in a manner and under circumstances which would render the guilty party liable to indictment for a common nuisance. This we think is substantially the conclusion to be derived from a careful examination of the adjudged cases. The apparent conflict between them can be reconciled on the ground that an injury to private property, or to the health and comfort of an individual, is in its nature special and peculiar, and does not cause a damage which can properly be said to be common or public, however numerous may be the cases of similar damage arising from the same cause. Certainly multiplicity of actions affords no good reason for denying a person

all remedy for actual loss and injury which he may sustain in his person or property by the unlawful acts of another, although it may be a valid ground for refusing redress to individuals for a mere invasion of a common and public right.

The rule of law is well settled and familiar, that every man is bound to use his own property in such manner as not to injure the property of another, or the reasonable and proper enjoyment of it; and that the carrying on of an offensive trade or business, which creates noisome smells and noxious vapors, or causes great and disturbing noises, or which otherwise renders the occupation of property in the vicinity inconvenient and uncomfortable, is a nuisance for which any person whose property is damaged or whose health is injured or whose reasonable enjoyment of his estate as a place of residence is impaired or destroyed thereby may well maintain an action to recover compensation for the injury. The limitations proper to be made in the application of this rule are accurately stated in *Bamford* v. *Turnley*, 3 Best & Smith, 66, and in *Tipping* v. *St. Helen's Smelting Co.* 6 Best & Smith, 608–616; *S. C.* 11 H. L. Cas. 642, and cases there cited. See, also, in addition to cases cited by the counsel for the plaintiff, *Spencer* v. *London & Birmingham Railway*, 8 Sim. 193; *Soltau* v. *De Held*, 9 Sim. (N. S.) 133.

The instructions given to the jury were stated in such form as to lead them to infer that this action could not be maintained, if it appeared that other owners of property in that neighborhood suffered injury and damage similar to that which was sustained by the plaintiff in her estate by the acts of the defendants. This, as applied to the facts in proof, was an error, and renders it necessary that the case should be tried anew.

*Exceptions sustained.*