DEPARTMENT OF REVENUE *vs.* ESTATE OF RAYMOND SHEA
& another.[1]

No. 06-P-1804.

Suffolk. December 3, 2007. - May 9, 2008.

Present: KANTROWITZ, DREBEN, & McHUGH, JJ.

*Commissioner of Revenue. Taxation,* Income tax. *Limitations, Statute of. Statute,* Construction.

The statute of limitations contained in G. L. c. 62C, § 65, did not bar an action brought in 2003 by the Department of Revenue (department) to collect personal income taxes from a wife and the estate of her deceased husband (collectively, the taxpayers) for the years 1980 through 1983, where the taxpayers' 1998 offer in settlement of the outstanding tax liability, which included a completed agreement to toll the statute of limitations while the offer was pending, survived the husband's death in 2000 and expired upon the termination of settlement negotiations by the department in 2002 [701-703]; and where the department's intervention in a civil action in 2002, seeking to establish an interest in property that it could liquidate to satisfy the taxpayers' obligation, constituted litigation raising a "question relative to . . . taxes" within the meaning of § 65 and, as such, gave the department one year from the conclusion of that litigation to commence a collection action [703-705].

CIVIL ACTION commenced in the Superior Court Department on April 25, 2003.

Motions for summary judgment were heard by *Janet L. Sanders,* J., and a motion for reconsideration was heard by her; a motion for assessment of damages was heard by *D. Lloyd Macdonald,* J., and entry of judgment was ordered by *Paul E. Troy,* J.

*Patricia L. Davidson* (*Robert S. White* with her) for the defendants.

*Kenneth W. Salinger,* Assistant Attorney General, for the plaintiff.

[1] Gladys M. Shea.

McHugh, J. For almost twenty years, the Commonwealth's Department of Revenue (DOR) has been trying to collect taxes owed by Gladys M. Shea (Gladys) and her now-deceased husband, Raymond E. Shea, Sr. (Raymond), for the four taxable years, 1980 through 1983.[2] The collection effort has had four distinct phases. The first addressed the propriety of the DOR's assessments. That phase was followed by a period of settlement negotiations. Shortly before negotiations ended, litigation ensued with respect to whether certain real estate could be seized and sold to satisfy the unpaid taxes. We concluded that phase in *Central Water Dist. Assocs.* v. *Commissioner of Rev.*, 70 Mass. App. Ct. 1108 (2007).

As the seizure issue was wending its way through the courts, the present phase began. At issue in this phase are the precise amount of taxes the Sheas owed and whether the statute of limitations bars the DOR's collection effort. After a summary judgment hearing, a judge of the Superior Court concluded that the statute had not run, and a later hearing on damages before a second judge produced a judgment in favor of the DOR in the amount of $1,495,830.31. Gladys and Raymond's estate (the Estate) appeals from that judgment. We affirm.

In material part, the facts are these. On April 12, 1989, October 23, 1990, and March 11, 1992, DOR assessed personal income taxes against Gladys and Raymond with respect to the returns they had filed for the taxable years 1980 through 1983. Between July 5, 1990, and June 6, 2002, the DOR recorded liens in the Worcester County registry of deeds against all of Raymond's property to secure payment of the taxes the assessments covered.

The Sheas contested the assessments through applications for abatements they filed with the DOR, then through a petition to the Appellate Tax Board, and then by an appeal to this court. See *Shea* v. *Commissioner of Rev.*, 44 Mass. App. Ct. 1116 (1998). In all proceedings, the DOR prevailed. The contest ended on April 24, 1998, when the Supreme Judicial Court denied the Sheas' application for further appellate review of this

[2]The controversy arose because Gladys and Raymond claimed to be residents of Florida during those years, while the DOR claimed that they were residents of Massachusetts.

court's decision. See *Shea* v. *Commissioner of Rev.*, 427 Mass. 1105 (1998).

On August 10, 1998, 108 days after denial of the application for further review, the Sheas submitted to the DOR an "Offer in Settlement" (Offer) of the outstanding tax liability, and agreed with the DOR that the statute of limitations embodied in G. L. c. 62C, § 65,[3] would be tolled while the Offer was pending. With the Offer in place, settlement negotiations began and were proceeding when Raymond died on June 23, 2000. Thereafter, the Estate continued the negotiations until the DOR terminated them in writing on July 30, 2002.[4]

On July 25, 2002, before the Offer was withdrawn, the DOR intervened in the so-called *Burncoat* litigation,[5] one of three Worcester County lawsuits filed to recover damages for eminent domain takings of property in which the DOR claimed that Raymond had an interest. The DOR intervened in the *Burncoat*

---

[3]In pertinent part, § 65, as amended through St. 2004, c. 262, § 29, provides:

"Taxes shall be collected: (i) within 6 years after the assessment of the tax; (ii) within any further period after such 6-year period during which the taxes remain unpaid but only against any real or personal property of the taxpayer to which a tax lien has attached and for which a notice of lien has been filed or recorded under section 50 in favor of the commonwealth in accordance with applicable state or federal law within 6 years after the assessment of the tax; (iii) prior to the expiration of any period of collection agreed upon in writing by the commissioner and the taxpayer before the expiration of such 6-year period; or, (iv) if there is a release of levy under section 64 after such 6-year period, then before such release. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. When any question relative to such taxes is pending before any agency or court at the end of such six-year period, the commissioner's right to collect any tax due shall continue until one year after the final determination of such question."

[4]The uncontested contents of the affidavit DOR submitted in support of its motion for summary judgment state that the negotiations terminated on July 30, 2002, although the termination letter is dated August 2, 2002. Nothing turns on the difference. Because the parties all focus on July 30, 2002, as the date on which settlement discussions ended, we, too, shall hereafter refer to July 30 as the end date.

[5]An eminent domain damages action involving seizure of property by the Burncoat Pond watershed district. Central Water District Associates *vs.* Burncoat Pond Watershed District, Worcester Superior Court, Civil Action No. 01-P-1051.

action to establish Raymond's interest in the eminent domain damages in anticipation of seizing that interest to satisfy its claim for unpaid taxes.[6] As we shall discuss below, the date of the DOR's intervention has significance for resolution of the statute of limitations claim this appeal involves.

On April 25, 2003, because no settlement had been achieved, the DOR commenced this action against the Estate, Gladys, and Raymond's children. In its verified complaint, the DOR alleged that, with interest and penalties, Raymond and Gladys owed $1,869,662.37 for the taxable years in question and that the Estate, Gladys, and, to the extent they received any estate proceeds, the Shea children were liable for that amount.[7] The DOR's involvement in the *Burncoat* litigation continued as this litigation began.

Gladys and the Estate answered, and Gladys counterclaimed. The answers alleged, among other things, that the statute of limitations had run. In her counterclaim, Gladys sought a declaration that the statute had run and a declaration that none of the DOR's tax liens had any continuing force and effect.

After some discovery, the DOR moved for summary judgment on liability, accompanying its motion with an affidavit and a statement of material facts, see Superior Court Rule 9A(b)(5) (2004), both of which mentioned the DOR's intervention in the *Burncoat* litigation. The affidavit also quoted from a portion of G. L. c. 62C, § 65, that extends the statute of limitations if litigation "relative to [the assessed] taxes is pending" when the initial limitation period expires. See note 3, *supra*. Gladys and the Estate opposed the DOR's motion and filed their own motions for summary judgment. Their filings were accompanied by statements of material facts and affidavits, none of which mentioned the *Burncoat* litigation or the impact of the DOR's intervention in that litigation on the statute of limitations.

A Superior Court judge allowed the DOR's motion and denied the cross motions. In a memorandum of decision accompanying the order, the judge focused on two primary issues. First, she concluded that expiration of liens the DOR had filed did not

---

[6]Later and for the same purpose, the DOR intervened in the two other Worcester County eminent domain actions.

[7]The DOR's claims against the children were later dismissed by stipulation.

terminate the DOR's right to collect the taxes underlying those liens. Second, she concluded that the statute of limitations had been tolled for the period from August 10, 1998, until July 30, 2002, when the Offer was outstanding and that, when the tolling period was taken into account, DOR's action had been filed in timely fashion.[8] In concluding that the action had been timely filed, however, the judge made a mistake in her calculation of the date on which the statute expired.[9]

No one brought the mistake to the judge's attention until Gladys and the Estate filed a motion for reconsideration about sixteen months later. By then, an assessment of damages hearing had been scheduled. The judge denied the motion for reconsideration essentially on grounds that any mistake she may have made with respect to the length of time between the end of settlement negotiations and commencement of this action was irrelevant because the DOR had argued, without opposition, that the *Burncoat* litigation, filed while settlement negotiations were in progress and still pending when this action was filed, had tolled the statute. As noted, a subsequent damage assessment led to a judgment of $1,869,662.37 against Gladys and the Estate from which they appeal.

On appeal, the DOR, Gladys, and the Estate began on common ground, agreeing that G. L. c. 62C, § 65, gave the DOR one year from the time the Supreme Judicial Court denied further appellate review on April 24, 1998, to file a collection action and that the one-year period was tolled 108 days later when Gladys and Raymond submitted their Offer containing the tolling agreement described earlier. At that point, though, harmony ends. Gladys and the Estate argue that the Offer was automatically withdrawn when Raymond died on June 23,

---

[8]The judge also concluded that a request by Gladys and the Estate pursuant to Mass.R.Civ.P. 56(f), 365 Mass. 824 (1974), for additional discovery time was meritless.

[9]Actually, there were two mistakes. First, the judge concluded that the DOR's action had been filed on April 23, 2003, when, in fact, the record shows that it was filed two days later on April 25. Second, relying on the parties' agreement that G. L. c. 62C, § 65, gave the DOR 257 days to file a collection action after the settlement negotiations ended on July 30, 2002, she concluded that the April 23, 2003, filing was timely. In fact, April 23, 2003, is 267 days after July 30, 2002, and April 25, the actual filing date, is 269 days after July 30.

2000. Even if the Offer was not withdrawn, they argue, the judge miscalculated the length of time between the formal termination of settlement negotiations on July 30, 2002, see note 4, *supra*, and commencement of this action on April 25, 2003, and that a correct calculation of the time would show that this action was filed too late. Finally, they claim, the *Burncoat* litigation did not toll the statute of limitations.

The first problem with those three arguments is that one cannot raise here for the first time an argument never advanced below, see, e.g., *Aldrich* v. *ADD, Inc.*, 437 Mass. 213, 222 n.13 (2002), and none of the three arguments was raised at the initial summary judgment hearing, even though the DOR's affidavit and statement of material facts put them squarely in issue. Instead of making those arguments to the motion judge, Gladys and the Estate argued principally that the DOR's liens had expired before this action was commenced and, as a consequence, the DOR had no right to pursue the tax liabilities the liens covered.[10] Secondarily, they argued that the six-year statute of limitations provided in G. L. c. 62C, § 65, had run, although, after quoting extensively from the statute, their entire argument on the statute consisted of the following two sentences:

> "Thus, unless the running of the statute of limitations was tolled (which [Gladys and the Estate argue] was not) any action by the Commonwealth had to commence no later than March 11, 1998. The Commonwealth filed the instant case on April 23, 2003 — more than five years after the statute had run."

Those two sentences do not raise any of the arguments Gladys and the Estate now press.

Although the arguments Gladys and the Estate seek to raise on appeal have been waived, see *Cottam* v. *CVS Pharmacy*, 436 Mass. 316, 323 (2002), we have chosen in our discretion to address them as they have been fully briefed, and they concern a matter of public importance on an issue that has not been previously addressed. See *ibid.*; *Quazi* v. *Barnstable County*, 70 Mass. App. Ct. 780, 783 n.2 (2007). In addition, it is in the interest of judicial economy to resolve, finally, this protracted matter.

[10]They did not prevail on that argument and have not renewed it here.

See generally *Commonwealth* v. *Bly*, 444 Mass. 640, 650-651 (2005).

Accordingly, if we were to consider the merits of the arguments Gladys and the Estate have made, we would agree that the motion judge miscalculated the length of time between termination of settlement negotiations and commencement of this action. We would also agree that this action was not filed within the time the statute permits unless the statutory period was somehow extended. In that regard, we agree that the DOR's intervention in the *Burncoat* litigation tolled the statute. We also think that the Offer, and the tolling provision it contained, survived Raymond's death.

Dealing first with the impact of Raymond's death, it is true that, as the Estate argues, an outstanding Offer typically is revoked automatically upon the death of the person who made or received it. See *Johnson* v. *Moreau*, 323 Mass. 481, 483 (1948). See also Restatement (Second) of Contracts § 36(1)(d) (1981). However, Gladys remained alive, and Raymond's death therefore had no impact on the Offer insofar as it affected her joint and several liability for the entire tax, see G. L. c. 62C, § 6(*a*), the Commonwealth sought to collect. More important, though, is that the provision in the Offer dealing with the statute of limitations was a completed contract, not simply an offer. That provision said that Gladys and Raymond waived the benefits of the statute of limitations "for the period during which [the] offer is pending" and that "the offer shall be deemed pending from the date of acceptance of the waiver of the statutory period of limitations by a Commonwealth of Massachusetts official, *until the date on which the offer is formally accepted, rejected or withdrawn in writing*"[11] (emphasis added). That language, construed in the context in which it appears and in light of the substantial public interest in effective tax collection, see Restatement (Second) of Contracts § 207 (1981), was a completed agreement under which Gladys and Raymond, in consideration of the Commonwealth's examination of their settlement proposal, agreed that the Offer would remain open until it was terminated in one of the three specified ways. Raymond's death was not one of

---

[11]An authorized official accepted the Offer on behalf of the Commonwealth on August 10, 1998.

the specified three, so the statute of limitations remained suspended until the Commonwealth's letter of August 3, 2002, effectively rejecting the Offer.[12]

The second claim advanced by Gladys and the Estate focuses on the sentence in G. L. c. 62C, § 65, that says "[w]hen any question relative to such taxes is pending before any agency or court at the end of such six-year period, the commissioner's right to collect any tax due shall continue until one year after the final determination of such question." Gladys and the Estate urge that that sentence does not encompass litigation like the *Burncoat* litigation in which the DOR and the taxpayer are not contesting some aspect of the tax obligation, but the DOR is instead seeking to establish an interest in property that it might ultimately liquidate to satisfy the taxpayers' obligation.

No decided case has determined the nature of the litigation encompassed by the contested sentence. On its face, however, the phrase "question relative to such taxes" is one of substantial breadth. See, e.g., *Felix A. Marino Co.* v. *Commissioner of Labor & Indus.*, 426 Mass. 458, 462 (1998), quoting from *California Div. of Labor Standards Enforcement* v. *Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997) (for purposes of ERISA preemption, a State law "relates to" an ERISA plan, and falls within ERISA's preemptive scope, if the law either has "a connection with" or makes a "reference to such a plan"); *Commonwealth* v. *Philip Morris, Inc.*, 448 Mass. 836, 844, 846 (2007) (phrase "relating to" in an arbitration clause is "broad"). See also Black's Law Dictionary 1158 (5th ed. 1979) ("relate to" means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with").

Moreover, on the few occasions that the Legislature has used a similar phrase, it has done so in a context that reveals its intent to encompass a broad area of inquiry. See G. L. c. 81, § 1 (requiring the highway department to hold annual open public meetings in each county for discussion of "questions relative to the public ways"); G. L. c. 160, § 108 (giving county

---

[12]It is undisputed that the Estate continued to participate actively in the settlement negotiations after Raymond's death until the negotiations were terminated.

commissioners jurisdiction of "questions relative to" certain obstructions of public ways); G. L. c. 179, § 23 (describing qualifications for voting on "questions relative to" certain pasture rights); G. L. c. 198, § 7 (requiring those with claims against insolvent estates to answer all "questions relative to" their claim); G. L. c. 211, § 26A (judicial evaluation questionnaires shall include "questions relative to the judge's performance, demeanor, judicial management skills, legal ability, attentiveness, bias and degree of preparedness"); G. L. c. 263, § 1 (requiring police officers to answer "questions relative to" the reasons for the arrest when asked by the person the officer arrested).

Construing the phrase "relative to" broadly would serve the sound purpose of providing the DOR with time to pursue litigation designed to determine or protect a taxpayer's available assets before proceeding with what otherwise might turn out to be futile and expensive litigation to obtain a judgment for the amount the DOR claims the taxpayer owes. In any event, we are required to construe the statute as written, see *Stop & Stop Supermarket Co.* v. *Urstadt Biddle Props., Inc.*, 433 Mass. 285, 289 (2001), without adding limitations the Legislature did not include. See *Carmel Credit Union* v. *Bondeson*, 55 Mass. App. Ct. 557, 560 (2002). Having in mind the broad language the statute contains and the sound objective a broad construction would serve, we think that litigation, like the *Burncoat* litigation, aimed at establishing a taxpayer's interest in property the DOR may use to satisfy a judgment is litigation raising a "question relative to . . . taxes" and that the DOR's participation in such litigation when the initial six-year statute expires gives the DOR one year from conclusion of that litigation to commence a collection action.[13]

One final point requires brief discussion. Gladys and the Estate point to a sentence at the end of the first paragraph of G. L. c. 62C, § 65, stating that the statute is tolled "[w]hen any question relative to such taxes is pending before any agency or court *at the end of such six-year period*" (emphasis added). The

---

[13]We reject the suggestion that it is unreasonable to apply G. L. c. 62C, § 65, as written because to do so could extend unreasonably the length of time estates remain open. In cases where the taxpayer desires prompt closure, he or she can take steps to have those questions resolved.

emphasized portion of that sentence, they claim, applies only if litigation is commenced within six years after assessment of the taxes, not when litigation is commenced within the initial six-year period as extended by an agreement between the DOR and a taxpayer.

Although the construction Gladys and the Estate proffer is plausible, we think the latter construction is more faithful to the text and purpose of the paragraph within which the emphasized language appears. That paragraph, see note 3, *supra*, begins with a statement that taxes shall be collected within one of four periods, each of which is assigned a roman numeral. The first period is "6 years after the assessment of the tax." The remaining three all modify the first and refer to "such six year period." Then, in addition to the three enumerated modifications, the statute provides two additional unenumerated modifications which, given their presence at the end of the paragraph, are designed to apply to the six years, as modified, if at all, by one of the three enumerated modifications. Accordingly, we think that the DOR's intervention in the *Burncoat* litigation, commenced within six years of the tax assessment, as those six years were extended by the agreement that formed a part of the Sheas' Offer, continued to extend the six-year limitations period with the result that this action was timely filed.

In sum, were we to reach the merits, we would conclude that Raymond's death did not terminate the agreement and that the Offer would toll the statute of limitations until the Offer was rejected or was otherwise terminated in writing. We would also conclude that the DOR's intervention in the *Burncoat* litigation, an intervention undertaken before the Offer was terminated and continuing when this action was commenced, gave the DOR one year from the date the *Burncoat* litigation ended to commence a collection action. Accordingly, were we to reach the merits, we would conclude that this action was timely filed.

*Judgment affirmed.*