SUPERIOR COURT 
 
 MICHAEL BARANOFSKY, KIMBERLY GALE, AND LAWRENCE ESSEMBER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED v. ROUSSELOT PEABODY, INC.

 
 Docket:
 2084CV00896-BLS2
 
 
 Dates:
 May 29, 2020
 
 
 Present:
 /s/Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS
 
 

             Rousselot Peabody, Inc., runs a gelatin manufacturing facility in Peabody, Massachusetts. The Plaintiffs live nearby. They contend that the plant frequently exudes noxious, disgusting odors that cause headaches, nausea, and vomiting. Plaintiffs allege that these foul smells have also reduced the value and interfered with their use and enjoyment of their properties. They assert claims on behalf of themselves and a proposed class of owners and occupants of residential property within one mile of the plant's property boundary. Plaintiffs say there are more than 7,000 residential households in this area.
            Rousselot has moved pursuant to Mass. R. Civ. P. 12(b)(6) to dismiss this lawsuit on the ground that the facts alleged in the complaint fail to state a claim upon which relief can be granted.
            The Court is not persuaded by Rousselot's arguments for dismissal. The private nuisance claim is viable even though Plaintiffs do not use the phrase "private nuisance" in their complaint, they allege that thousands of people were harmed, Rousselot obtained a wastewater discharge permit to operate the plant, and Plaintiffs' properties do not touch the Rousselot property. The negligence claim is supported by adequate factual allegations; no more detail is required to state a claim. As for the trespass claim, it appears that under Massachusetts law repeated invasion of property by a reeking stench may constitute trespass. Rousselot waived its argument that the economic loss doctrine requires dismissal by not raising the point in its memorandum of law; in any case, if the issue had not been waived the rule would still not bar Plaintiffs' claims. The Court will therefore deny the motion to dismiss.
            1. Legal Standards—Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, if true, would "plausibly suggest[] ... an entitlement to relief." Lopez v. Commonwealth, 463 Mass. 696, 701
                                                            -1-
(2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).
            At this stage of the case, the Court must assume that the factual allegations in the complaint are true and must draw "every reasonable inference in favor of the plaintiff [s]" from those allegations. Rafferty v. Merck & Co., Inc., 479 Mass. 141, 147 (2018). In so doing, however, it must "look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 473 Mass. 336, 339 (2015), quoting Curtis v. Herb Chambers 1-95, Inc., 458 Mass. 674, 676 (2011). In other words, the Court must accept as true only the facts alleged in the complaint, not any "legal conclusions cast in the form of factual allegations." Sandman v. Quincy Mut. Fire Ins. Co., 81 Mass. App. Ct. 188, 189 (2012).
            2. Private Nuisance. The facts alleged in the complaint state a viable claim for private nuisance. The Court need not decide whether the complaint also states a claim for public nuisance in order to resolve the motion to dismiss.
            "A private nuisance is actionable when a property owner creates, permits, or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another." Taygeta Corp. v. Varian Assocs., Inc., 436 Mass. 217, 231 (2002), quoting Doe v. New Bedford Housing Authority, 417 Mass. 273, 288 (1994).
            "Nuisances at common law frequently arise from offensive sights, sounds or smells." Rattigan v. Wile, 445 Mass. 850, 858-859 (2006), quoting General Outdoor Advertising Co. v. Department of Pub. Works, 289 Mass. 149, 183 (1935).
            Plaintiffs allege that Rousselot has maintained conditions on its property that unnecessarily cause the facility to emit overpowering smells of rotting flesh and other vile odors, and that the resulting stink unreasonably interferes with local residents' ability to use and enjoy their property. Those allegations state a claim for private nuisance. See Metropoulos v. MacPherson, 241 Mass. 491, 497498 (1922) (allegations that factory regularly emitted "insistent pounding," "jarring noise," and "foul and noisome odors" stated claim for private nuisance); see also, e.g., Pendoley v. Ferreira, 345 Mass. 309, 312-313 (1963) (nauseating odors from piggery constituted private nuisance).
            Rousselot argues that the private nuisance claim should nonetheless be dismissed for several reasons. None of these arguments has merit.
                                                            - 2 -
            2.1. Label Used by Plaintiffs. It does not matter that Plaintiffs label their first cause of action "nuisance" without specifying that they are asserting, at least in part, a "private nuisance" claim. What matters is whether the facts alleged state a claim for private nuisance, not whether the complaint uses that phrase. See generally Gallant v. City of Worcester, 383 Mass. 707, 709 (1981) (complaint may allege facts plausibly suggesting that plaintiff has legally viable claim even if complaint does not name correct legal theory); Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass. App. Ct. 479, 487 (1988) (plaintiff may press any legal theory fairly raised by allegations in complaint, even if that theory is not expressly invoked in the complaint).
            Under principles of notice pleading, a single count for "nuisance" may encompass both private and public nuisance claims. See Mass. R. Civ. P. 8(e)(2) ("A party may set forth two or more statements of a claim ... alternatively or hypothetically, either in one count ... or in separate counts"); cf. Pucci v. Amherst Rest. Enterprises, Inc., 33 Mass. App. Ct. 779, 780 n.2 (1992) (single count for "negligence" could encompass claims for negligent failure to provide adequate security and negligent service of alcohol to an intoxicated person).
            2.2. Numerous Plaintiffs. Rousselot asserts that Plaintiffs cannot sue for private nuisance because they allege that the offensive odors have harmed many people and properties throughout area surrounding the gelatin plant. This argument was considered and rejected by the Massachusetts Supreme Judicial Court long ago.
            Claims of private nuisance may be brought against activity that interferes with the use and enjoyment of many properties across a wide area. See Wesson v. Washburn Iron Co., 95 Mass. (13 Allen) 95, 101-104 (1866); see also Pendoley, 345 Mass. at 312-313 ("large group of homeowners and families" successfully brought private nuisance claim against piggery based on foul odors).
            In Wesson, an innkeeper sued for private nuisance, claiming that a nearby foundry produced noise, vibrations, and coal ash that diminished the value and interfered with the use and enjoyment of plaintiff's property. 95 Mass. at 9596. The SJC held it was reversible error to instruct the jury that the plaintiff could not prevail if "other owners of property in that neighborhood suffered injury and damage similar to that which was sustained by the plaintiff in her estate by the acts of the defendants." Id. at 104.
                                                            - 3 -
Under Massachusetts law, private nuisance claims are not limited to situations where only a few people have suffered injury. That is because "an injury to private property, or to the health and comfort of an individual, is in its nature special and peculiar, and does not cause a damage which can properly be said to be common or public, however numerous may be the cases of similar damage arising from the same cause." Id. at 103 (emphasis added). As the SJC further explained, the principle that harm to a common right may only be prosecuted as a public nuisance, not through a claim for private nuisance, does not extend:
to cases where the alleged wrong is done to private property, or the health of individuals is injured, or their peace and comfort in their dwellings is impaired by the carrying on of offensive trades and occupations which create noisome smells or disturbing noises, or cause other annoyances and injuries to persons and property in the vicinity, however numerous or extensive may be the instances of discomfort, inconvenience and injury to persons and property thereby occasioned.
Wesson, 95 Mass. at 102 (emphasis added). Rousselot's reliance on purportedly contrary authority from other jurisdictions is misplaced. Wesson controls here.
            2.3. Water Discharge Permit. Rousselot also contends that it cannot be sued for nuisance because it operates the facility pursuant to a wastewater discharge permit issued by the Massachusetts Department of Environmental Protection.[1]
            Whether this permit bars Plaintiffs' nuisance claim cannot be resolved on a motion to dismiss. It is an affirmative defense that must be pleaded and proved by Rousselot, not something that Plaintiffs must address in their complaint.
            If the operations that Plaintiffs contend led to the discharge of foul odors were authorized by the MassDEP permit, and Rousselot could show that it had fully complied with the terms and conditions of that permit and done so in a reasonable and careful manner to avoid unnecessarily injuring others, then Rousselot may well have a complete defense to the nuisance claim. See Flannery, supra; Czapski v. Sun Oil Co., 303 Mass. 186, 186 (1939) (since defendant
---------------------------
[1]The Court has not considered Rousselot's further assertion that it is negotiating an administrative consent order with MassDEP. It would be inappropriate to consider new assertions of fact, not alleged in the complaint, in deciding Rousselot's motion to dismiss. See General Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992) ("materials outside the pleadings" generally may not be considered in reviewing Rule 12(b)(6) motion to dismiss).
                                                            - 4 -
had license to operate gasoline filling station, plaintiff could not "restrain as a nuisance the doing in a reasonable and careful manner of the very act licensed"); see also Hub Theatres, Inc. v. Massachusetts Port Auth., 370 Mass. 153, 155-156 (1976) (operation of airport authorized by Legislature could not be nuisance).
            But the mere existence of such a permit does not automatically bar Plaintiffs' claim for nuisance. For example, if Rousselot did not fully comply with its permit, then the permit "would afford no such protection." Flannery, supra.
            If Rousselot operated its plant negligently and unnecessarily disturbed Plaintiffs' right of quiet enjoyment, then again the permit would not bar a nuisance claim even if Rousselot had not violated its permit. See generally Hub Theatres, 370 Mass. at 156 (governmental authorization of an activity "is 'subject always to the qualification that the business must be carried on without negligence or unnecessary disturbance of the rights of others.' " (quoting Sawyer v. Davis, 136 Mass. 239, 242 (1884)).
            Similarly, if the permit authorized certain activities by Rousselot, but did not expressly or by necessary implication allow Rousselot to discharge foul odors onto surrounding properties, then the permit would be no defense to Plaintiffs' claim of nuisance. See Hakkila v. Old Colony Broken Stone & Concrete Co., 264 Mass. 447, 451-452 (1928) (blasting permit not a defense because it gave no right to throw stones on another's land); Haskell v. City of New Bedford, 108 Mass. 208, 215-217 (1871) (legislative authorization of sewer discharging into ocean gave no right to create nuisance by discharging filth and emitting stench that obstructed and interfered with use of plaintiff's dock).
            Plaintiffs allege that Rousselot repeatedly violated its permit by discharging tens of thousands of excess pounds of total suspended solids in its wastewater. They also allege that the noxious odors were caused by Rousselot's failure to adequately remove solid organic waste and sludge from its wastewater, and that if the plant were properly run it would not have to emit any smell.
            Accepting those allegations as true, as the Court must at this stage of the case, Plaintiffs' allegations suggest that Rousselot cannot avoid nuisance liability merely because it obtained a wastewater discharge permit. The complaint adequately asserts that Rousselot has violated and thus is not protected by its permit. It also adequately asserts that Rousselot has unnecessarily disturbed the quiet enjoyment of nearby properties, which would also defeat this defense.
                                                            - 5 -
Whether Rousselot can prove its affirmative defense remains to be seen. Rousselot's disagreement with the facts alleged in the complaint is not a ground for dismissing the nuisance claim.
            2.4. Non-Adjoining Property. Rousselot's argument regarding lack of physical proximity is also unavailing. The fact that none of the Plaintiffs lives immediately next to the gelatin plant does not bar their private nuisance claim. Though Rousselot insists that a private nuisance only exists where one property interferes with the use of adjoining land, the only authority it musters for that proposition is a federal district court decision purporting to apply New Jersey law. It cites no Massachusetts appellate decision in support of that argument. Under Massachusetts law, a private nuisance only "requires two different parcels of property: one on which the nuisance condition exists, and another whose occupants are burdened by the nuisance." Doe, 417 Mass. at 288. There can be a private nuisance that harms a non-abutting property.
            2.5. Economic Loss Rule. Rousselot did not properly raise and as a result waived its argument that the nuisance claim is barred by the economic loss rule. But that argument would have been unavailing even if Rousselot had asserted and developed the point in its memorandum of law.
            During oral argument Rousselot asserted that these tort claims should be dismissed because Plaintiffs seek only economic damages. Rousselot did not make this argument in its initial memorandum, or even try to raise the point belatedly in its reply. As a result, Rousselot has waived this issue as a ground for seeking dismissal under Rule 12(b)(6).2 Nonetheless, the Court would not
---------------------------
[2] A party that files a motion in the Superior Court must submit a memorandum "stating the reasons, including supporting authorities," why the motion should be allowed. Sup. Ct. Rule 9A(a)(1). Any reply memorandum may only address "matters raised in the opposition that ... could not reasonably have been anticipated and addressed in the ... initial memorandum." Rule 9A(a)(3). Arguments raised for the first time in a reply memorandum, that could have been addressed in the initial memorandum, come too late. See Town of Boxford v. Massachusetts Highway Dept., 458 Mass. 596, 605 n.21 (2010). These requirements ensure that the moving party provides sufficient notice of and support for its arguments and that the opposing party has the opportunity to respond in writing and at any oral argument.
Rousselot did not raise the economic loss argument in its written memoranda. It first hinted at this argument in an email to the session clerk two days before
            <continued>
the hearing. An email or letter submitted without leave of court is not the place to make legal argument. This email was an attempt to submit an unauthorized surreply memorandum. The Court declines to consider it. See Sup. Ct. Rule 9A(a)(3) ("No other reply or surreply submission shall be filed without leave of court, which will be granted only in exceptional circumstances.").
It would be unfair to let Rousselot press an entirely new argument that it first suggested in a last-minute email and first developed at oral argument, since Plaintiffs have had no meaningful opportunity to respond. The Court deems these arguments to be waived for purposes of deciding the pending motion to dismiss. Cf. Board of Reg. in Med. v. Doe, 457 Mass. 738, 743 n.12 (2010) (argument raised for first time at oral argument, in violation of rule requiring that parties' contentions must be presented in written brief, is waived). If Rousselot believes that these arguments still have merit after all material discovery has been completed, it is free to raise them in a motion for summary judgment.
                                                            - 6 -
dismiss the nuisance claim based on the economic loss rule even if Rousselot had not waived the issue. Cf. Dept. of Revenue v. Estate of Shea, 71 Mass. App. Ct. 696, 702, rev. denied, 451 Mass. 1109 (2008) (explaining how court would have ruled if appellant had not waived issues by failing to raise them below).
            Where it applies, the economic loss doctrine provides that "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." Aldrich v. ADD Inc., 437 Mass. 213, 222 (2002), quoting FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993).
            When it comes to damage caused by private nuisances, however, a plaintiff need only prove that the defendant interfered with the use or enjoyment of plaintiff's property. That is a sufficient injury to property to state a claim and to obtain compensation equal to the diminution in rental value caused by the nuisance. See Rattigan, 445 Mass. at 861-862.
            There is no need to allege or prove physical damage to one's property in order to state or prevail on a claim for private nuisance. The SJC has made clear that “[a]n actor need not 'directly damage the land or prevent its use in order to constitute a nuisance.' " Id. at 858, quoting 58 Am. Jur. 2d Nuisances § 98 (2002). That is because the common law right to be free of nuisances protects "the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land." Id., quoting Restatement (Second) of Torts, § 821D comment b (1979); see also Taygeta, 436 Mass. at 230-231 ("The purpose of a
                                                            - 7 -
private nuisance action is to obtain a remedy for interference with the use and enjoyment of property.").[3]
3. Negligence.
            3.1. Sufficiency of Allegations. The facts alleged in the complaint state a viable claim for private nuisance. Rousselot's contention that this claim is based on purely conclusory allegations is unavailing.
            Plaintiffs allege that Rousselot had a duty to design and operate is gelatin manufacturing plant to capture and properly dispose of excess organic materials, if Rousselot had done so the plant would not emit noxious odors, Rousselot breached that duty, and as a result Plaintiffs and their properties have been injured. With respect to breach of duty, Plaintiffs allege that (among other things) Rousselot used an inadequate clarifier to separate suspended solids from the plants wastewater and did not properly cover or dispose of the organic waste and sludge produced by its facility.
            These allegations are sufficient. See Adams v. Congress Auto Ins. Agency, Inc., 90 Mass. App. Ct. 761, 765 (2016) (elements negligence are duty, breach, causation, and damages). Plaintiffs were not required to provide more detailed factual allegations to state a claim for negligence. See generally Lopez v. Commonwealth, 463 Mass. 696, 701 (2012) ("detailed factual allegations are not required" to survive Rule 12(b)(6) motion to dismiss);
            Rousselot argues that Plaintiffs cannot sue for negligence without stating "what specific actions Rousselot was required to take to exercise ordinary care," exactly when Rousselot failed to do so, and precisely why that failure constitutes negligence and how it caused harm. The Court disagrees.
---------------------------
[3] The economic loss rule does not apply to public nuisance claims either. See Stop & Shop Cos. v. Fisher, 387 Mass. 889, 896-897 (1983). When a party asserts a claim for public nuisance, they must allege and prove that they "sustained some special and peculiar damage" that differs in kind from harm caused to others by the alleged nuisance. Stop & Shop Cos. v. Fisher, 387 Mass. 889 (1983), quoting Willard v. Cambridge, 85 Mass. (3 Allen) 574, 574 (1862). Purely economic loss can suffice to state a claim. "Severe pecuniary loss is usually a special type of harm" that will support a claim for public nuisance, "but if a whole community suffers such loss, then it becomes a public wrong and the plaintiff cannot recover." Id. at 897. However, "an established business may state a claim" for a public nuisance that caused it to suffer "severe economic harm resulting from loss of access to its premises by its customers." Id. at 896.
                                                            - 8 -
A claim for negligence does not have to be alleged with particularity. See DeWolfe v. Hingham Centre, Ltd., 464 Mass. 795, 798 n.8 (2013) (negligent misrepresentation); Mass. R. Civ. P. 9(b) (only fraud, mistake, duress, and undue influence must be pleaded with particularity). All that is required is a "short and plain statement of the claim." Mass. R. Civ. P. 8(a). The allegations in this complaint state a claim for negligence.
            3.2. Economic Loss Rule. As discussed in § 2.5 and footnote 2 above, Rousselot waived its argument that the negligence claim is barred by the economic loss rule. However, if Rousselot had not waived the issue the Court would hold that the economic loss rule does not apply under the circumstances of this case.
            The economic loss doctrine developed "to prevent ... tort concepts from undermining contract expectations," on the theory that contracting parties are free to allocate the risk of economic loss as they see fit. Wyman v. Ayer Properties, LLC, 469 Mass. 64, 70 (2014); accord, e.g., Hunt Const. Group, Inc. v. Brennan Beer Gorman/Architects, P.C., 607 F.3d 10, 14 (2d Cir. 2010) (economic loss doctrine "serves to maintain the boundary between contract law, which is designed to enforce parties' contractual expectations, and tort law, which is designed to protect citizens and their property" from physical harm) (quoting Hamill v. Pawtucket Mut. Ins. Co., 892 A.2d 226, 228-229 (Vt. 2005)).
            As a result, "[w]hen the economic loss rule has been applied, the parties usually were in a position to bargain freely concerning the allocation of risk[.]" Clark v. Rowe, 428 Mass. 339, 342 (1998).
            This doctrine does not apply here because the parties had no relationship and thus Plaintiffs had no opportunity to bargain with Rousselot to allocate the risk of possible harm.[4] See Wyman, 428 Mass. at 70-71 (inapplicable to claim that
---------------------------
[4] If the economic loss doctrine did apply here, the allegations that some putative class members suffered personal injury (including headaches, nausea, and vomiting) would not suffice to keep the named Plaintiff's negligence claim alive. As noted above, this doctrine—where it applies—cuts off recovery for economic harm only "in the absence of personal injury or property damage." Aldrich, 437 Mass. at 222, quoting FMR Corp., 415 Mass. at 395. However, the three named Plaintiffs do not allege that they have suffered any personal injury. Plaintiffs cannot represent a class if their personal claims are not viable. See Barbara F. v. Bristol Div. of Juvenile Court Dept., 432 Mass. 1024 (2000) (rescript) ("If an individual 'may not maintain the action on [his or her] own behalf, he or she may not seek relief on behalf of a class.' ") (quoting Doe v. The
            <continued>
Governor, 381 Mass. 702, 704-705 (1980)). Plaintiffs would be entitled to amend their complaint if the economic loss doctrine applied, the lack of personal injury allegations had the effect of barring the negligence claim, and that lack could in good faith be cured by an amendment.
                                                            - 9 -
builder's negligence damaged common areas of condominium building, where trustees had no contractual relationship with builder); City of Boston v. Purdue Pharma, LP, Suffolk Supr. Ct. No. 1884CV02860, 2020 WL 416406, at *9 (Mass. Supr. Jan. 3, 2020) (Sanders, J.) (inapplicable to claim that negligent provision of opioids caused substantial government costs); City of Boston v. Smith & Wesson Corp., Suffolk Supr. Ct. No. 199902590, 12 Mass. L. Rptr. 225, 2000 WL 1473568, at *9 (Mass. Super. July 13, 2000) (Hinkle, J.) (inapplicable to claim that negligent provision of firearms caused substantial government costs).[5]
            4. Trespass.
            4.1. Foul Odors. Finally, the facts alleged in the complaint also state a viable claim for trespass. As with the negligence claim, Plaintiffs are not required to allege even more specific, particularized factual details to state a trespass claim.
            Someone may be liable for trespass if they "negligently or otherwise released a substance which might lodge anywhere that favorable winds might carry it" may be liable for trespass. Sheppard Envelope Co. v. Arcade Malleable Iron Co., 335 Mass. 180, 187 (1956) (landowner's business emitted cinders and gritty substances that continuously fell on neighbor's property). Similarly, if one "causes a thing" to enter land in the possession of another person without their possession, that too constitutes trespass. Dilbert v. Hanover Ins. Co., 63 Mass. App. Ct. 327, 333 (2005), quoting Restatement (Second) of Torts § 158 (1965).
            The complaint adequately alleges that Rousselot has caused substances and things to enter Plaintiffs' properties without permission. Plaintiffs assert that the gelatin plant emits noxious odors into the air outside the plant, and that those odors drift onto neighboring property where they sicken and repulse the residents. One can reasonably infer from these allegations that Rousselot emits
---------------------------
[5]See also Sullivan v. Pulte Home Corp., 306 P.3d 1, 3 (Ariz. 2013) (doctrine does not apply to non-contracting parties); Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass 'n, 771 F.3d 1230, 1242 (10th Cir. 2014) (under Colorado law, doctrine does not apply "[w]hen claims arise from a non-contractual duty"); Cummings v. Carroll, No. COA19-283, 2020 WL 1016839, at *8 (N.C. Ct. App. Mar. 3, 2020) (doctrine does not apply when parties have no contractual privity and defendant's duty to plaintiff is not established by contract).
                                                            -10-
certain airborne molecules, those molecules enter Plaintiffs' property, and Plaintiffs perceive those molecules as a horrible smell when they come into contact with olfactory receptors in Plaintiffs' noses; that is how smell works.
            Though Rousselot cites a few cases from other jurisdictions holding that only "tangible" invasions of land constitute a trespass, and that therefore the wafting of offensive odors cannot give rise to liability for trespass, it cannot point to any Massachusetts appellate authority so holding.[6]
            Other jurisdictions have abandoned "[t]he traditional concept that a trespass must be a direct intrusion by a tangible and visible object" and held that intrusion of noxious odors onto one's property can constitute a trespass. See Davis v. Georgia-Pac. Corp., 445 P.2d 481, 482-483 (Oregon 1968) (en banc) (pulp and paper plant liable in trespass for emanation of vibrations, gases, smoke, particulates, and "offensive odors" to other property); accord Stephens v. Koch Foods, LLC, 667 F. Supp. 2d 768, 795 (E.D. Tenn. 2009) (consistent with "the modern trend' in trespass law ... to allow an action based on intangible entries," under Tennessee law an alleged release of "odorous gases" onto plaintiff's property constituted trespass).
            "[A]ny intrusion which invades the possessor's protected interest in exclusive possession, whether that intrusion is by visible or invisible pieces of matter or by energy which can be measured only by the mathematical language of the physicist," is an unlawful trespass. Martin v. Reynolds Metals Co., 342 P.2d 790, 794 (Oregon 1959) (aluminum reduction plant's emission of fluoride compounds in gases and particulates onto plaintiff's property was trespass); see also Bradley v. Am. Smelting & Ref Co., 709 P.2d 782, 786-792 (Wash. 1985) (en bane) (copper smelter's emission of microscopic particulates, undetectable by human senses, was trespass if deposited on another's property).
            Since Massachusetts treats the nonpermissive invasion of land by physical things or substances as a trespass, and molecules that produce a foul odor are physical things, there appears to be no reason why Massachusetts law does not similarly treat a release of noxious gas or other microscopic things as a trespass.
---------------------------
[6] Rousselot's heavy reliance on Amaral v. Cuppels, 64 Mass. App. Ct. 85 (2005), is misplaced. Amaral holds that the nonpermissive propulsion of golf balls or other physical objects onto someone else's property constitutes trespass. Id. at 91. It did not consider whether a physical invasion by noxious molecules, poisonous compounds, or microscopic particles may constitute trespass.
                                                            -11-
Rousselot's assertion that trespass requires some permanent encroachment or physical damage to property is also without merit. For example, repeated overflights by airplanes at extremely low altitudes can constitute trespass even though each incursion is temporary and causes no permanent damage. See Smith v. New England Aircraft Co., 270 Mass. 511, 530 (1930) .
            Where an ongoing trespass is temporary, and can be ended by taking appropriate remedial steps, "the true measure of damages is the loss in rental value of the property while injury continues." Fenton v. Quaboag Country Club, Inc., 353 Mass. 534, 539 (1968) (repeated trespass by golf balls); accord Belkus v. City of Brockton, 282 Mass. 285, 287-288, 290-291 (1933) (repeated trespass by flooding); Matthews v. New York Cent. & H.R.R. Co., 231 Mass. 10, 18-19 (1918) (repeated trespass by smoke from railroad).
            To the extent Rousselot argues that nuisance and trespass claims are mutually exclusive, that assertion is also unavailing. "The courts have been groping for a reconciliation of the doctrines of trespass and nuisance over a long period of time and, to a great extent, have concluded that little of substance remains to any distinction between the two when air pollution is involved." Bradley, 709 P.2d at 786. As the Supreme Court of Washington has explained:
Whether an invasion of a property interest is a trespass or a nuisance does not depend upon whether the intruding agent is "tangible" or "intangible." Instead, an analysis must be made to determine the interest interfered with. If the intrusion interferes with the right to exclusive possession of property, the law of trespass applies. If the intrusion is to the interest in use and enjoyment of property, the law of nuisance applies. As previously observed, however, the remedies of trespass and nuisance are not necessarily mutually exclusive.
Id. at 690-691.
            4.2. Economic Loss Rule. Rousselot's argument that the economic loss doctrine bars the trespass claim fails for the reasons previously discussed. Rousselot waived this argument by not asserting it until oral argument. See § 2.5 and footnote 2 above. This doctrine does not apply where, as here, the parties had no relationship and no opportunity to bargain about an allocation of risk. See Wyman, 428 Mass. at 70-71. And, in any case, a trespass if proved will constitute a sufficient injury to property rights to state a claim even in the absence of any permanent physical damage. Cf. Smith, 270 Mass. at 530.
                                                            - 12 -
ORDER
            Defendant's motion to dismiss is DENIED. Defendant shall file an answer to the complaint. The session clerk shall set up a Rule 16 scheduling conference.
/s/Kenneth W. Salinger Justice of the Superior Court
May 29, 2020
                                                            -13-
xxz